## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BEPEX INTERNATIONAL, LLC,

        Plaintiff,

v.

HOSOKAWA MICRON BV,

        Defendant.

Case No.  19-CV-2997 (KMM/JFD)

**ORDER ON DEFENDANT'S
MOTION TO COMPEL DISCOVERY
AND EXTEND FACT DISCOVERY**

**FILED UNDER SEAL**

        This matter is before the Court on Defendant Hosokawa Micron BV's ("HMBV") Motion to Compel Discovery and Motion for Extension of Time to Complete Discovery (Dkt. No. 45). This Court held a motions hearing on November 8, 2021. Jonathan Jay and Roger Masson represented Defendant, and Anne Tavernier and Jeffrey Post represented Plaintiff.

        Defendant's Motion concerns nine requests relating to discovery: six interrogatories, one request for production ("RFP"), one unsigned Set of Interrogatories, and a request to extend the close of fact discovery. In response, Plaintiff Bepex International, LLC ("Bepex") interposes objections and asks the Court to deny Defendant's Motion almost entirely, the two exceptions being that Plaintiff does not oppose Defendant's request for an order that Plaintiff sign its unsigned interrogatory responses, or for an order extending the close of fact discovery. To resolve these disputes, the Court orders the production of only that information which is both relevant and proportional to this case. Therefore, Defendant's Motion is granted in part and denied in part, as set forth below.

## I.    BACKGROUND

Plaintiff Bepex commenced this action in November 2019 alleging that Defendant HMBV stole trade secrets and breached the parties' 2016 License Agreement regarding three pieces of industrial equipment: Solidaire paddle dryers, TorusDisc disc dryers, and Turbulizer paddle mixers. (Compl., Dkt. No. 1.) These pieces of equipment are used in building machines that mix and/or dry large quantities of materials effectively across a variety of industries.

Plaintiff Bepex is a privately-owned, limited liability company that designs and manufactures custom machinery for industrial processing systems. (Compl. ¶ 1; Pl.'s Rule 7.1 Disclosure Statement, Dkt. No. 84.) Defendant HMBV is a subsidiary of a publicly held parent corporation, Hosokawa Micron International, Inc., and is a supplier of machinery for industrial processing systems. (Def.'s Rule 7.1 Disclosure Statement, Dkt. No. 83.)

A company called Hosokawa Micron Corporation ("HMC") originally owned both parties, but in 2004, Plaintiff Bepex spun off from HMC, purchasing its assets from HMC and establishing itself as a separate business selling customized industrial equipment. (Def.'s Mem. Supp. at 2, Dkt. No. 46.) Among the assets Plaintiff purchased from HMC at the time of the spinoff were the alleged intellectual property and trade secrets at issue in this action. (*Id.*)

At the same time that Plaintiff separated from HMC, Plaintiff also entered into a License Agreement with Defendant HMBV, which had remained a subsidiary of HMC. Plaintiff authorized Defendant to continue using Plaintiff's "technical information to

manufacture and sell certain custom industrial processing equipment, namely the Solidaire, TorusDisc, and Turbulizer ('Licensed Equipment')." (Compl. ¶¶ 1, 8.) The parties signed the first of these Agreements in 2004, and since then, states Defendant, the Agreement has been renegotiated in 2009, 2013, and 2016. (Def.'s Mem. Supp. at 3–4.) The 2016 License Agreement is the operative agreement that Plaintiff claims Defendant has breached, giving rise to this action. (Compl. ¶¶ 9–22.)

In 2019, Plaintiff informed Defendant that the 2016 License Agreement would terminate in September 2019. (Def.'s Mem. Supp. at 4.) The parties attempted to negotiate a new agreement, but the attempts failed. (*Id.*) During these negotiations, Defendant informed Plaintiff that, although it would not use Bepex's trademarks or trade secrets, it reserved the right to continue selling the Solidaire, TorusDisc, and Turbulizer equipment because Bepex's patents protecting trade secrets relating to the equipment had expired, and thus, the technology was in the public domain. (*Id.*) Plaintiff disagrees and brings claims in this action against Defendant for breach of the 2016 License Agreement, theft of trade secrets under 18 U.S.C. § 1836 and Minnesota Statutes chapter 325C, and seeks a declaration from this Court, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant may not manufacture or sell the licensed equipment in dispute; that Bepex's technical information contains trade secrets that were protected by prior License Agreements' confidentiality provisions; and that Defendant's use of those trade secrets to complete any sale after the 2016 License Agreement expired constitutes trade secret misappropriation and a breach of the License Agreement. (Compl. ¶¶ 12–40.) As relief, Plaintiff requests declaratory judgments to protect and enforce its trade secrets and rights under the allegedly

breached License Agreement; an order for Defendant to return Plaintiff's trade secrets and to enjoin it from future use of them; damages; and attorney's fees and costs. (*Id.* at 13.)

The parties are in discovery, which began in January 2021. (Pretrial Scheduling Order, Dkt. No. 20.) The initial Scheduling Order has been amended four times (Dkt. Nos. 34, 42, 87, 96), and fact discovery is currently due to close on April 4, 2022. (Third Am. Pretrial Scheduling Order at 1.) Defendant served its first RFPs and Interrogatories on Plaintiff in mid-January 2021, and its second set of Interrogatories in mid-July 2021. (Def.'s Mem. Supp. at 5; *see also* Def.'s Exs. B–D, Dkt. Nos. 47-2–47-5).) Plaintiff served its responses within a month or two of each of these requests. (Def.'s Mem. Supp. at 5; *see also* Def.'s Exs. E–G, Dkt. No. 47-5–47-7.) Defendant alleges that Plaintiff served its response to Defendant's second set of Interrogatories unsigned. (Def.'s Mem. Supp. at 5.) The parties have engaged in meet-and-confers to try to resolve or narrow their discovery disputes, but Defendant claims that during a conference call held on September 24, 2021, Plaintiff promised to supplement its Interrogatory answers and to produce additional responsive documents, but then failed to do so, prompting Defendant's instant Motion to Compel. (*Id.*)

Defendant HMBV now moves to compel Bepex to supplement its responses to Interrogatory Nos. 1, 2, 4, 9, 10, and 11, or alternatively to limit Bepex to the theories and trade secrets disclosed, and to supplement its production to RFP No. 5. (Def.'s Mot. at 13.) Defendant also moves to compel Bepex to verify its responses to Defendant's second set of Interrogatories. (*Id.* at 1). Finally, Defendant moves to amend the case's First Amended Pretrial Scheduling Order (Dkt. No. 42) by "modest[ly]" extending fact discovery and

motion deadlines "by an appropriate period" that Defendant leaves to the discretion of the Court. (*Id.* at 1.)

Plaintiff Bepex opposes most of Defendant's Motion. It responds that its Complaint and discovery responses have been amply specific and need no supplementation. (Pl.'s Mem. Opp'n at 1, Dkt. No. 74.) Furthermore, Plaintiff claims that some of its discovery responses have been delayed by HMBV's own deficient discovery. (*Id.* at 1.) Plaintiff stands silent on Defendant's claim that Plaintiff's Response to the Second Set of Interrogatories was not signed and verified. Plaintiff does not oppose Defendant's request for an extension to the Scheduling Order's deadlines. (*Id.* at 12–13.)

## II.    GOVERNING LAW

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However, the scope of discovery is not limitless; it includes only what is relevant to the actual claims or defenses that are at issue. *See Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021).

The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case. *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113,

at *7 (D. Minn. Sept. 6, 2016) (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. A court may "find that a request on its face is not proportional to the needs of the case, given the relevance of the requested discovery." *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-CV-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020) (quoting *Klein v. Affiliated Grp., Inc.*, Case No. 18-CV-949 (DWF/ECW), 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019)).

When a requesting party believes its discovery requests are relevant and proportional, but a responding party has failed to provide the requested information, the requesting party may move a court for an order compelling the responding party's production. Fed. R. Civ. P. 37. Again, once a threshold showing of relevance has been made by the requesting party, the burden of demonstrating why information need not be provided—and thus, why a court should deny a motion to compel—is on the party resisting disclosure. *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971 (DWF/KMM), 2018 WL 6040016, at *4 (D. Minn. Oct. 18, 2018) (citation omitted).

## III.    DISCUSSION

Before turning to the bulk of Defendant's Motion regarding Interrogatory Nos. 1, 2, 4, 9, 10, and 11, RFP No. 5, Plaintiff's second set of Interrogatory responses, and the proposed amendments to the Scheduling Order, the Court will first address a preliminary matter.

### A.    Preliminary Matter

"The meet-and-confer requirement of this District's Local Rules is intended to lead to a meaningful, pre-motion-filing exchange of views between the parties to a lawsuit, and, if possible, to a full or partial resolution of the matter(s) that are the subject of a contemplated motion." *Magistrate Judge John F. Docherty's Practice Pointers and Preferences*, https://www.mnd.uscourts.gov/judges-practice-pointers, at 3 (last visited Feb. 1, 2022). During the Court's opening remarks at the November 8, 2021 motions hearing, the Court noted that the parties' offsetting motions to compel covered many discrete disputes bundled together into two complex motions. The Court observed that the parties' Motions and briefs, which raised so many unresolved disputes, provided circumstantial evidence that the meet-and-confer process was not working as intended.

For future meet-and-confers, the Court reminds the parties that letters and emails are disfavored in a successful meet-and-confer process, and that "[n]either a desultory, pro forma conversation, nor letter-writing or email campaigns satisfy the letter—or the spirit— of the meet-and-confer requirement of the Local Rules." *Magistrate Judge Docherty's Practice Pointers* at 3. Instead, parties are expected to engage in a cooperative discussion

of discovery requests and objections with the goals of finding agreement where possible, and narrowing the specific, genuine issues that remain in need of the Court's intervention.

**B.    Interrogatories and Requests for Production at Issue**

Defendant asks the Court to compel Plaintiff to supplement its responses to Interrogatory Nos. 1, 2, 4, 9, 10, and 11, and to supplement its production in response to RFP No. 5. Each request, or group of requests, will be discussed in turn below.

**1.    Interrogatory No. 1**

Interrogatory No. 1 asks Plaintiff to "[i]dentify and describe with particularity the alleged trade secrets that Plaintiff claims have been wrongfully misappropriated by Defendant." (Def.'s Ex. C at 3, Dkt. No. 47-3). Plaintiff points out that it has provided seven pages in response to this Interrogatory, which, in addition to the Complaint, provides Defendant with ample information about the trade secrets at issue in this action. (*See* Pl.'s Mem. Opp'n at 4.; Def.'s Ex. F, Dkt. No. 48.) At oral argument, Plaintiff repeatedly explained that the trade secrets at issue are a combination of the plans, designs, drawings, tests, calculations, and costing of the disputed equipment used to build machines. Defendant contends that, despite Plaintiff's lengthy response to this Interrogatory, it still does not have proper notice of what Plaintiff alleges that Defendant has stolen. (Def.'s Mem. Supp. at 7–8.) For example, Defendant argues that Plaintiff describes particular components of, or manufacturing processes for, the equipment in dispute, but provides no indication of which parts of its description are the trade secrets at issue, or how those parts relate to each other as constitutive elements of a particular alleged trade secret. (*Id.* at 7.) Likewise, Defendant argues that those components and processes are described only in

generalized terms, such as referencing a particular "wedge nut," "adjustment," or "proprietary forging and forming process," or certain "calculations" or "tests," but not identifying with enough particularity what is meant by these terms such that Defendant could show that its own wedge nuts, adjustments, and the like, are not those that Plaintiff alleges are its trade secrets. (*Id.*) Furthermore, Defendant claims that Plaintiff's failure to answer this Interrogatory fully and completely is a bottleneck issue that is restricting other parts of the discovery process because Defendant does not know the exact contours of the alleged trade secrets at the core of this action. (*Id.* at 10.)

"[A] trade secret may be 'information, including a formula, pattern, compilation, program, devise, method, technique, or process, that' derives independent economic value from not being generally known and that has been the subject of reasonable efforts to maintain its secrecy." *Scientia Energy, Inc. v. Vinco, Inc.*, No. 11-CV-554 (LIB), 2012 WL 13028233, at *2 (D. Minn. Jan. 3, 2012) (quoting Minn. Stat. § 325C.01, subd. 5)). "In a suit for misappropriation of trade secrets [brought under the Minnesota Uniform Trade Secrets Act], the plaintiff must specify what information it seeks to protect." *Fox Sports Net N., LLC v. Minn. Twins P'ship*, 319 F.3d 329, 335 (8th Cir. 2003) (citation omitted). Generalized statements do not "provide the particulars or specificity" by which the opposing party or the Court may test "whether any of the items even constitutes a trade secret." *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999). A plaintiff must describe its trade secrets with the same specificity expected at summary judgment or trial. *Id.*

The Court holds that Defendant's request in Interrogatory No. 1 is both relevant and proportional. The Court finds that a clear, thorough explanation of the particularities of each trade secret at issue is of fundamental relevance to all claims and defenses in this action brought for misappropriation of trade secrets. Referencing a string of materials or processes used in the design and manufacture of the disputed licensed equipment, but not stating precisely what those materials or processes are, nor whether those materials or processes constitute trade secrets (or are a primary component of a trade secret that is comprised of a concrete number of other identified parts), fails to provide the specificity that would be required at summary judgment or before a factfinder at trial. From Plaintiff's description, even basic information such as precisely how many trade secrets are at issue remains unclear. Furthermore, if a particular design feature is a trade secret—such as, for example, the number of paddles per row and the spacing between those paddles—then a sufficiently specific description of those trade secrets should include the number of paddles and the measurements between them such that the opposing party can dispute that its design uses *that* number of paddles or *that* spacing measurement between them. In other words, the successful litigation of this case hinges on the parties and the Court sharing the same understanding of the concrete, discrete trade secrets at issue.

The Court also holds that, given the critical importance of the discovery Defendant seeks in Interrogatory No. 1 to resolving this case, the burden or expense on Plaintiff to provide additional information, even though it believes it has already provided ample data, is proportional to the needs of this case. The parties are engaged in resource-intensive litigation to protect their respective business interests, and it is indisputable that the

information Defendant seeks—the exact contours and specific characteristics of each allegedly stolen trade secret and its constitutive elements—is entirely within the control of Plaintiff. It is proportional to the needs of the case that Defendant understands the number of trade secrets at issue, the number of each trade secret's constitutive elements, and the characteristics that make these trade secrets, trade secrets. Those characteristics must have distinguishable sizes, shapes, lengths, arrangements, usages, qualities, and like descriptors, such that Defendant (and a fact finder) can compare that description to Defendant's own components or processes to find them identical—or not. Given the importance of this relevant information, the burden and expense of providing more specific descriptions is justified. The Court grants Defendant's Motion as to Interrogatory No. 1 and orders Plaintiff to supplement its response to this Interrogatory **within 14 days of this Order** by providing highly specific descriptions of each trade secret, along with the parts of each trade secret, with the same detail as Plaintiff would present at summary judgment or before a factfinder at trial. This includes, but is not limited to, separately listing and describing with precision each alleged trade secret individually, detailing each secret's exact identity, content, boundaries, scope, and constitutive elements—including a thorough dissection and description of any asserted combinations of elements and their relationships to each other within each trade secret—without relying on general, conclusory, generic, or vague phrases.

### 2.    Interrogatory No. 2

Interrogatory No. 2 asks Plaintiff to "[i]dentify all facts supporting the allegations of Plaintiff's Complaint in this matter." (Def.'s Ex. C at 3.) The parties' impasse on this

11

Interrogatory demonstrates the importance of Plaintiff's supplemental response to Interrogatory No. 1. Like a roundabout with no exits, Plaintiff argues that it has already answered this Interrogatory in its response to Interrogatory No. 1, but nevertheless, has agreed to supplement its response to Interrogatory No. 2, but to do so, is waiting for Defendant's supplementations of some of its own discovery requests. (Pl.'s Mem. Opp'n at 9–10; Def.'s Ex. K at 2, Dkt. No. 47-11.) Meanwhile, Defendant claims that, without a precise response to Interrogatory No. 1, it cannot provide the supplementary answers that Plaintiff seeks from Defendant, without which, in turn, Plaintiff claims it cannot respond to Interrogatory No. 2. (Def.'s Mem. Supp. at 10.) In addition to these circular impasses, Plaintiff argues that it cannot conceivably provide the exhaustive information that Defendant seeks because of the enormous burden such production would require. (Pl.'s Mem. Opp'n at 9.)

To end this cycle, the Court first holds that the discovery sought in Interrogatory No. 2 is relevant and, with some limitations discussed below, proportional. To understand the claims alleged in the Complaint, which in turn will allow Defendant to defend against Plaintiff's allegations, Plaintiff's existing response to Interrogatory No. 2 must be supplemented. Just as the Court found, when discussing Interrogatory No. 1 above, that a clear, thorough explanation of the trade secrets at issue is of fundamental relevance to this action, the Court likewise finds that a clear, thorough explanation of the Complaint's allegations—in all their technical particulars—is of fundamental relevance to this case.

While the discovery sought is broad, the Court finds that the nature of Plaintiff's claims in this action—claims that involve facts about a decades-long, complex relationship

between the parties—will likely necessitate significant, but not unduly burdensome or disproportionate, discovery. To the extent that Plaintiff's response to Interrogatory No. 1 is deficient because it lacks sufficient detail about the number of trade secrets at issue, the number of each trade secret's constitutive elements, and the characteristics that distinguish each of those trade secrets and its components, the Court finds that Plaintiff's response to Interrogatory No. 2 is also deficient. The Court holds, however, that Defendant's request here to expand on the allegations of Plaintiff's Complaint is not proportional as written because it is overly broad to seek "all facts" supporting the Complaint. Courts in this district have found that a contention interrogatory is overly broad "if it seeks 'all facts' supporting a claim or defense." *Kinetic Co. v. Medtronic, Inc.*, No. 08-CV-6062 (JMR/AJB), 2010 WL 11561275, at *4 (D. Minn. Nov. 23, 2010) (citing *Shqeirat v. U.S. Airways Grp., Inc.*, No. 07-CV-1513 (ADM/AJB), 2008 WL 4232018, at *4 (D. Minn. Sept. 9, 2008)). However, the Court holds that, given how relevant this discovery request is, and finding that this request is so interwoven with Interrogatory No. 1 that the same proportionality analysis applies to it, *some* supplementation of Plaintiff's response to this Interrogatory is required under Rule 26.

The Court orders a more interactive process than simply granting Defendant's request to compel Plaintiff to supplement its response. Instead, **on or before March 4, 2022**, Defendant shall serve on Plaintiff a document that succinctly identifies specific gaps in the Complaint's factual supports which Defendant seeks to fill through this Interrogatory. Next, **between March 4 and April 4, 2022**, the parties shall engage in a robust meet-and-confer process on Defendant's gap-filling requests guided by the Court's

13

admonishments about the meet-and-confer process. (*See supra* Section III.A.) Remaining disputes regarding supplementation required by this Interrogatory, if any, shall be submitted in concise letters from each respective party to this Court's chambers at docherty_chambers@mnd.uscourts.gov, copying the other party, **on or before April 11, 2022**. Therefore, to the extent that the Court finds that limited supplementation is required by Rule 26 because the information sought by Defendant's Interrogatory No. 2 is relevant and proportional, the Court grants Defendant's request and Plaintiff shall supplement its response to Interrogatory No. 2 by means of the interactive process described above.

### 3.      Interrogatory No. 4 and RFP No. 5

The Court will next consider Interrogatory No. 4 and RFP No. 5, both of which pertain to Plaintiff's alleged damages. Interrogatory No. 4 asks Plaintiff to "[i]dentify the amount of damages you seek in this action against Defendant, including identification of the documents within your possession, custody or control supporting such facts." (Def.'s Ex. C at 3.) Similarly, RFP No. 5 asks Plaintiff to produce "[a]ll documents supporting your claim for any damages alleged in this matter." (Def.'s Ex. B at 5, Dkt. No 47-1.) Defendant argues that Plaintiff has only provided a single damages calculation on a single theory of recovery in its initial disclosures and has not supplemented this damages claim at any point during fact discovery (Def.'s Mem. Supp. at 12.) Defendant asks this Court to not only order Plaintiff to supplement its responses and productions to Interrogatory No. 4 and RFP No. 5, but also to find that Plaintiff has waived all other damages theories. (Def.'s Mem. Supp. at 12.) Plaintiff argues that it provided a highly detailed initial damages calculation that is still accurate, although it may require updating as Defendant produces

supplemental responses to information relevant to Plaintiff's damages calculation, such as Defendant's sale of relevant equipment, its customers, any royalty documents, and records of relevant equipment built during and after the governing License Agreement. (Pl.'s Mem. Opp'n at 12–13.) Plaintiff also argues that, to the extent that Defendant asks this Court to find that Plaintiff has waived all other damages theories, Defendant's request is improper where Defendant has failed to produce relevant damages-related discovery that impedes Plaintiff's ability to supplement its own damages-related disclosures. (*Id.* at 13.)

While Defendant's requests in Interrogatory No. 4 and RFP No. 5 are relevant, Plaintiff claims it has produced everything responsive to these discovery requests. An accurate damages calculation is undeniably relevant to resolving the claims and defenses of this case, and it is proportional to the needs of the case that Plaintiff produce discovery to support its asserted theory of damages. Yet when a party asserts that it has nothing more to produce, Courts generally take them at their word. *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (citation omitted) ("[T]he Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable."). That Plaintiff's current productions are sufficiently proportional at present does not mean that Plaintiff need not supplement its asserted damages in the future should new discovery production create new gaps in Plaintiff's calculation. However, at present, the Court finds that any order for Plaintiff to supplement its discovery would have no practical effect, and therefore, the Court denies Defendant's Motion as to Interrogatory No. 4 and RFP No. 5. The Court also declines to find that Plaintiff has waived all other damages theories because such a finding would be premature before Plaintiff has seen the additional

15

discovery directed to be made by this Order, some of which may be relevant to Plaintiff's alleged damages. Of course, if Plaintiff seeks greater or different damages in the future, and does so with inadequate notice or inadequate disclosure, Plaintiff runs a serious risk that the Court will refuse to permit Plaintiff to pursue those greater or different damages. The risk of taking the course Plaintiff is taking, in other words, is on Plaintiff and not on Defendant, which is another reason to deny this claim of Defendant's.

### 4.    Interrogatory No. 9

Interrogatory No. 9 asks Plaintiff to "[i]dentify and describe the 'software programs transferred to HMBV to facilitate equipment design' as set forth in Plaintiff's 12/7/20 Initial Disclosures." (Def.'s Ex. C at 4.) Defendant argues that this Interrogatory request responds to Plaintiff's lack of reasonable particularity about the software programs it alleges that Defendant used in violation of the 2016 License Agreement and trade secret laws. (Def.'s Mem. Supp. at 11.) Plaintiff contends that it has identified the software programs used to design equipment, as well as the format of those programs, and considers its answers complete. (Pl.'s Mem. Opp'n at 10–11.)

The Court holds that Defendant's request in Interrogatory No. 9 is both relevant and proportional and orders Plaintiff to supplement its responses to this request with greater specificity. Whether the software programs at issue contained trade secrets, and whether Defendant used those programs to violate the 2016 License Agreement and trade secret laws, is relevant to issues at the core of this case, as well as to defenses against such central claims. While Plaintiff has provided brief narrative descriptions of the programs sought by Defendant's Interrogatory, the software used to operate them, and where such program

information has been stored, Plaintiff's descriptions remain vague and as-yet-undisclosed details are highly relevant, as detailed below.

Additionally, given that Plaintiff's response to this Interrogatory directly bears on resolving this action, Plaintiff's burden or expense in fully responding to this discovery request is proportional to the needs of this case. The parties are engaged in resource-intensive litigation, and the information Defendant seeks is entirely within the control of Plaintiff. For example, Plaintiff states that the software programs at issue enabled the calculation of design information, sizing, and costing; were typically stored on floppy drives; and were used first through HP programmable calculators, then through Mathcad, and later, through a customized Excel program. (Def.'s Mem. Supp. at 11 (citations to various exhibits omitted).) Plaintiff's identification of these programs fails to give any names of the actual programs used or each particular program's version, or to explain how the software on which these programs ran could be identified among various versions. Additionally, it is hard to see how the alleged customized Excel software most recently used could be identified by Defendant without more information.

Courts have found that when a trade secret involves software, a plaintiff must not only describe the software functions, but also provide the specific underlying methods and source code that comprise trade secrets. *See NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 1:17-CV-8829, 2020 WL 2836778, at *15 (N.D. Ill. May 31, 2020). The scant details Plaintiff has provided to explain what calculations these unnamed programs performed—calculations that appear to be one or some of the constitutive elements of the alleged trade secrets at issue—require supplementation to adequately name

and describe the software at issue, and to provide greater detail about each program's underlying methods, as well as the source code of programs comprising any of the alleged trade secrets. Because this information is directly relevant to what is at stake in the case, the burden and expense of producing a sufficiently specific response are outweighed, and Plaintiff shall supplement its response to Interrogatory No. 9 to provide thorough descriptions of each software program transferred to Defendant that played any role in facilitating equipment design and the alleged trade secret thefts. These descriptions shall include, but are not limited to, identification of each software program used, including any versions or other means of distinguishing each unique program, as well as distinguishing identifiers of the software that facilitated its use. This supplementation shall also include the specific underlying methods and source code that comprises the alleged trade secrets contained within each software program.

### 5.    Interrogatory Nos. 10 and 11

The Court will next consider Interrogatory Nos. 10 and 11, both of which pertain to how each of Plaintiff's alleged trade secrets came to be in Defendant's possession. Interrogatory No. 10 asks Plaintiff to, "[f]or each alleged trade secret, identify when and how the trade secret came to be in HMBV's possession including identification of any communications including or forwarding the trade secret to HMBV." (Def.'s Ex. D at 3, Dkt. No. 47-4.) Similarly, Interrogatory No. 11 requests that Plaintiff "[i]dentify all documents provided to HMBV by or for Bepex that contains an alleged trade secret and for each such document identify the trade secret contained therein." (*Id.*) Plaintiff responded to Interrogatory No. 10 with two sentences stating it had transmitted the trade

secrets to Defendant when the Defendant was a related company or licensee and directed Defendant to all its productions to date. (Def.'s Mem. Supp. at 9.) In response to Interrogatory No. 11, Plaintiff directed Defendant to see its answer to Interrogatory No. 1. (*Id.*) Defendant argues that Plaintiff may not respond to these Interrogatories that call for specific details with generalized statements that transmissions of the alleged trade secrets at issue occurred at some point in the parties' 27-year historical relationship, or by generally directing Defendant to all documents that Plaintiff has already produced during discovery. (*Id.* at 9–10.) Plaintiff contends that, given the longstanding and complex relationship between the parties and the broad scope of the documents that would be responsive to these Interrogatories, the enormous burden to seek and produce such information outweighs any relevance such supplementation might have. (Pl.'s Mem. Opp'n at 9.) Additionally, Plaintiff argues that it has already agreed to supplement its responses to these Interrogatories with representative samples once Defendant produces pre-2016 discovery as requested. (*Id.* at 9–10.)

These Interrogatories present another instance of the parties' discovery requests being so interdependent that one stalled response can create a backlog of other pending responses. The Court's understanding is that, with this Order requiring Plaintiff's response to Interrogatory No. 1 upon which Defendant's pending productions hinge, no impediment now stands between Plaintiff receiving Defendant's pre-2016 discovery, and, in turn, Plaintiff's resulting promised supplementation of its responses to these Interrogatories should follow.

The Court holds that Defendant's requests in Interrogatory Nos. 10 and 11 are both relevant and proportional and orders Plaintiff to supplement its responses to these requests. These Interrogatories seek information about the trade secrets at issue and how they came to be in Defendant's possession, and the answers to these questions are relevant to the claims and defenses of this case and require Plaintiff's supplementation.

The Court also holds that, given the importance of information about how each trade secret passed from Plaintiff to Defendant to resolving this action, Plaintiff's burden or expense in fully responding to these discovery requests is proportional to the needs of this case. This is particularly the case where the parties indicate fewer than 20—and perhaps only 2—machines have been sold using allegedly misappropriated trade secrets, which is not an unwieldy number of machines. (*See, e.g.,* Def.'s Ex. I at 3, Dkt. No. 47-9; Def.'s Ex. K at 2, 3, 6.) Even if Defendant had sold a greater number of machines, Plaintiff's claim that it has been harmed by Defendant's alleged License Agreement and trade secret violations gives such weighty relevance to the information Defendant seeks in these Interrogatories that Plaintiff's proportionality objection would likely still be outweighed.

While parties are not required to organize discovery production for the greatest ease of the opposing party, the Court finds that Plaintiff's response to Interrogatory No. 10 directing Plaintiff to guess which already-produced discovery is responsive to this Interrogatory is deficient because it is not sufficiently particular. Defendant is entitled to understand what constitutes each discrete trade secret, and when and how Plaintiff alleges it transmitted the trade secret to Defendant. Regarding Interrogatory No. 11 referring Defendant to its answer to Defendant's Interrogatory No. 1, the Court has found Plaintiff's

response to Interrogatory No. 1 itself requires supplementation. Should that supplementation result in a fulsome response to Interrogatory No. 11 here, then Plaintiff may continue to direct Defendant to Plaintiff's response to Interrogatory No. 1. However, if, after supplementing its answer to Defendant's Interrogatory No. 1, Plaintiff finds that it does not fully answer Interrogatory No. 11, then Plaintiff shall provide such supplements as are needed to respond to this relevant discovery request. The parties are engaged in resource-intensive litigation, and this information that Defendant seeks is within the control of Plaintiff. Given the importance of this relevant information to what is at stake in the case, the burden and expense are outweighed, and Plaintiff shall supplement its responses to Interrogatory Nos. 10 and 11.

### C.    Plaintiff's Unsigned Second Set of Interrogatory Responses

Defendant also raises in its Motion that Plaintiff has neither signed nor verified its Response to the Second Set of Interrogatories, in violation of Rule 33(b)(5) which states that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." (Def.'s Mem. Supp. at 13.) Defendant moves the Court to order Plaintiff to verify its responses. (Def.'s Proposed Order at 1, Dkt. No. 50.) Plaintiff offers neither explanation nor objection to Defendant's Motion on this point. Plaintiff shall sign and verify its Response to the Second Set of Interrogatories as Rule 33(b)(5) requires and shall serve the Response upon Defendant again **on or before February 11, 2022**.

### D.    Defendant's Request to Amend the Pretrial Scheduling Order

Finally, Defendant moves this Court for a modest extension of time to the close of fact discovery and subsequent motion deadlines in the First Amended Pretrial Scheduling

Order (Dkt. No. 42) so that Plaintiff can supplement its responses, Defendant can review those responses, and Defendant can request further discovery if needed. (Def.'s Mem. Supp. at 14; Def.'s Proposed Order at 2.) Plaintiff raises no objection to this and is amenable to a reasonable extension for fact discovery. (Pl.'s Mem. Opp'n at 13.) Since Defendant filed its Motion, the Court has issued two amendments to the Pretrial Scheduling Order. (Dkt. No. 87, Dkt. No. 96.) In the Court's most recent Third Amended Pretrial Scheduling Order, issued on January 4, 2022, the deadline for the close of fact discovery has been extended to April 4, 2022. (Third Am. Pretrial Scheduling Order at 1.) Therefore, the Court denies as moot Defendant's Motion as to the request to amend the First Amended Pretrial Scheduling Order's fact discovery deadline.

## IV. CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Hosokawa Micron BV's Motion to Compel Discovery and Motion for Extension of Time to Complete Discovery (Dkt. No. 45) is **GRANTED** in part and **DENIED** in part as set forth above; and

2. This Order shall be unsealed in its entirety 30 days from the date it is filed, unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information referred to in this Order, and shall file a joint letter and proposed redacted order within 14 days from the date this Order is filed, identifying

22

with specificity the redactions they believe are required and the basis for those redactions.

Dated: February 3, 2022

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge