## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BEPEX INTERNATIONAL, LLC,

        Plaintiff,

v.

HOSOKAWA MICRON BV,

        Defendant.

Case No. 19-CV-2997 (KMM/JFD)

**ORDER ON PLAINTIFF'S MOTION
TO COMPEL DISCOVERY**

**FILED UNDER SEAL**

This matter is before the Court on Plaintiff Bepex International, LLC's ("Bepex") Motion to Compel Discovery from Defendant Hosokawa Micron BV ("HMBV") (Dkt. No. 51). This Court held a motions hearing on November 8, 2021, at which Anne Tavernier and Jeffrey Post represented Plaintiff, and Jonathan Jay and Roger Masson represented Defendant.

Plaintiff's Motion concerns twelve requests relating to discovery: six requests for production ("RFP") and six interrogatories. In response to Plaintiff's Motion, Defendant HMBV interposes objections and asks the Court to deny the Motion in its entirety. To resolve these disputes, the Court orders the production of only that information which is both relevant and proportional to this case. Therefore, Plaintiff's Motion is granted in part and denied in part, as set forth below.

## I.    BACKGROUND

This is a case about two companies that design, manufacture, and sell custom equipment for industrial machines. For decades, the parties operated under license agreements that allowed them to share trade secrets, but when their final license agreement,

entered into in 2016, expired on September 2, 2019, Plaintiff alleges that Defendant continued to use Plaintiff's trade secrets without legal permission, and, consequently, filed the instant action seeking relief for Defendant's alleged thefts. (Compl. ¶¶ 9, 21, 27–28, Dkt. No. 1.) The three pieces of equipment at issue in this action are Solidaire paddle dryers, TorusDisc disc dryers, and Turbulizer paddle mixers, all of which are used to build machines that can mix and/or dry industrial materials. (*Id.* at 1.) As additional context, the Court incorporates the Background Section of its February 4 Order (Dkt. No. 97) granting in part and denying in part Defendant's Motion to Compel and for an Extension of Time to Complete Discovery (Dkt. No. 45), with the following additions.

The parties are in discovery, which began in January 2021. (Pretrial Scheduling Order, Dkt. No. 20.) The initial Scheduling Order has been amended four times (Dkt. Nos. 34, 42, 87, 96), and fact discovery is currently due to close on April 4, 2022. (Third Am. Pretrial Scheduling Order at 1.) Plaintiff served its first RFPs on Defendant in mid-January 2021, and its first Interrogatories in mid-February 2021. (Pl.'s Mem. Supp. at 5–6, Dkt. No. 52.) Defendant served its RFP responses on Plaintiff in mid-March, but Plaintiff alleges it took Defendant until the end of June to produce any documents. (*Id.* at 5.) Defendant served its first interrogatory responses on Plaintiff in mid-July, approximately five months after receiving Plaintiff's first set of interrogatories. (*Id.*) Plaintiff claims that throughout the discovery process Defendant has made baseless excuses that it does not understand the meaning of key terms at issue and, therefore, cannot conduct a diligent search for responsive discovery to produce. (*Id.* at 8–13.)

The parties have engaged in meet-and-confers to try to resolve or narrow their discovery disputes. (*Id.* at 6.) In mid-August 2021, Plaintiff sent Defendant a deficiency letter setting forth alleged gaps in Defendant's responses to date. (*Id.* (citing Pl.'s Ex. C, Dkt. No. 70).) Defendant responded a month later and claimed its responses were sufficient (*id.* (citing Pl.'s Ex. D, Dkt. No. 54-1)), to which Plaintiff responded with a letter reaffirming its deficiency contentions and noting the Defendant's late response to Plaintiff's interrogatories resulted in Defendant's waiver of its objections to them (*id.* at 6 (citing Pl.'s Ex. E, Dkt. No. 54-1)). In mid-October, Defendant supplemented its responses to Plaintiff's interrogatories, as well as produced supplemental documents in response to Plaintiff's RFPs, after which the parties exchanged several more letters. (*Id.* (citing Pl.'s Ex. F, Dkt. No. 54-1; Pl.'s Ex. N, Dkt. No. 54-3).) Plaintiff contends that Defendant has refused to supplement its responses and productions with "basic information related to this dispute[,]" prompting Plaintiff's instant Motion to Compel. (*Id.*)

On the same day Plaintiff filed its Motion, Defendant filed its Motion to Compel Discovery and Motion for an Extension of Time to Complete Discovery. (Dkt. No. 45.) As previously noted, the Court addressed Defendant's Motion in its earlier Order. (*See* Feb. 4 Order). Of relevance here, the Court observed in its earlier Order that discovery requests made by both parties appeared to hinge on Plaintiff's clear articulation of each of the alleged trade secrets at issue in this action, as requested by Defendant's Interrogatory No.

1.[1] (*See* Feb. 4 Order at 8–11, 13, 19.) Finding that Interrogatory both relevant and proportional, the Court ordered Plaintiff to supplement its previous responses

> by providing highly specific descriptions of each trade secret, along with the parts of each trade secret, with the same detail as Plaintiff would present at summary judgment or before a factfinder at trial. This includes, but is not limited to, separately listing and describing with precision each alleged trade secret individually, detailing each secret's exact identity, content, boundaries, scope, and constitutive elements—including a thorough dissection and description of any asserted combinations of elements and their relationships to each other within each trade secret—without relying on general, conclusory, generic, or vague phrases.

(*Id.* at 11.) This supplementation should be ongoing as the Court writes its instant Order.

The Court now turns to Plaintiff's Motion to Compel Defendant to supplement its responses to RFP Nos. 2, 6, 7, 10, 12, and 18, and to Interrogatory Nos. 4, 5, 7, 8, 9, and 10. (Pl.'s Mem. Supp. at 13–30.) Defendant opposes Plaintiff's Motion, arguing Plaintiff misstates facts and procedural history and fails to support assertions (Def.'s Mem. Opp'n at 1–11, Dkt. No. 76), and that the discovery Plaintiff seeks is overbroad, disproportional, and vague (*id.* at 11–15).

## II.    GOVERNING LAW

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing

---

[1] Defendant's Interrogatory No. 1 asks Plaintiff to "[i]dentify and describe with particularity the alleged trade secrets that Plaintiff claims have been wrongfully misappropriated by Defendant." (Def.'s Ex. C at 3, Dkt. No. 47-3.)

*Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However, the scope of discovery is not limitless; it includes only what is relevant to the actual claims or defenses that are at issue. *See Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021).

The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case. *Id.* (citing *Hofer v. Mack Trucks, Inc*., 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. A court may "find that a request on its face is not proportional to the needs of the case, given the relevance of the requested discovery." *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-CV-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020) (quoting *Klein v. Affiliated Grp., Inc.*, Case No. 18-CV-949 (DWF/ECW), 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019)).

When a requesting party believes its discovery requests are relevant and proportional, but a responding party has failed to provide the requested information, the requesting party may move a court for an order compelling the responding party's production. Fed. R. Civ. P. 37. Again, once a threshold showing of relevance has been made by the requesting party, the burden of demonstrating why information need not be provided—and thus, why a court should deny a motion to compel—is on the party resisting disclosure. *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971 (DWF/KMM), 2018 WL 6040016, at *4 (D. Minn. Oct. 18, 2018) (citation omitted).

## III. DISCUSSION

Before turning to the discovery requests at issue in Plaintiff's Motion, the Court incorporates its preliminary discussion of the importance of the meet-and-confer process from its earlier Order. (*See* Feb. 4 Order at 6–7.) Motions, like this one, that bring numerous, broad disputes, are circumstantial evidence of a failure to use the meet-and-confer process as intended pursuant to the Local Rules of this District. *See Magistrate Judge John F. Docherty's Practice Pointers and Preferences*, https://www.mnd.uscourts.gov/ judges-practice-pointers, at 3 (last visited Feb. 7, 2022).

Local Rule 7.1 of this Court requires parties to meet and confer about the subject matter of a potential motion before it is filed. *See* D. Minn. LR 7.1(a). The Meet-and-Confer Statement for this Motion describes the disputes discussed that led to this Motion in a single, general sentence: "The parties' respective positions as to outstanding discovery, objections to discovery requests, and supplemental discovery responses." (Meet-and-Confer Statement at 1, Dkt. No. 61.) The Meet-and-Confer Statement describes the

6

communications between the parties as "telephone conference, email correspondence, and letter correspondence" on listed dates. (*Id.*)

Future discovery-related motions in this case must be accompanied by a meet-and-confer statement that describes each particular dispute at issue, the date, time, and duration of face-to-face meetings or telephone conferences in which the issue was discussed, and what resolution or partial resolution was reached. The parties may communicate, if they wish, by email and letter, but each discovery dispute must have been the subject of a telephone or face-to-face conversation, because "[n]either a desultory, pro forma conversation, nor letter-writing or email campaigns satisfy the letter—or the spirit—of the meet-and-confer requirement of the Local Rules." *See Magistrate Judge Docherty's Practice Pointers* at 3. The Court will return to the parties, as unripe for decision, any discovery dispute that has not been the subject of a true meet-and-confer, with instructions that that particular discovery dispute shall not be re-presented until after there has been a proper meet-and-confer process. The parties should also bear in mind that if the repeated presentation of such unripe disputes causes discovery delays in this case, the Court may be unable to find good cause to amend the Court's Pretrial Scheduling Order if a party or parties request an extension of time to complete discovery.

## A.    Requests for Production at Issue

Plaintiff asks the Court for an order compelling Defendant to supplement its production to RFP Nos. 2, 6, 7, 10, 12, and 18. Each request will be discussed in turn.

### 1.    RFP No. 2

RFP No. 2 asks Defendant to produce "[a]ll designs, testing results, component lists, software, calculations, or other technical information for the Equipment that HMBV has in its possession." (Pl.'s Ex. A at 5, Dkt. No. 67.) Plaintiff contends that if Defendant's claim that it designed and developed its own trade secrets were true, Defendant's production supporting that claim in response to RFP No. 2 should be much greater in quantity than it has been; that the productions Defendant has provided are without clear labels so that Plaintiff can understand to which discovery requests they correspond; and that some of Defendant's productions have been improperly withheld as privileged, or restricted to "attorneys'-eyes-only," because of a claim that they contain trade secrets, yet Defendant inconsistently argues elsewhere  that  the knowledge is in the public domain. (Pl.'s Mem. Supp. at 14–15.) Plaintiff alleges, based on those designs that Defendant has produced, that there appear to be gaps in the discovery because the designs produced do not include designs for all the licensed products (as would be expected), are not clearly dated, have limited customer references, and are almost devoid of the requested accompanying test results or calculations. (*Id.* at 15.) Without any way to compare design productions with other responsive productions, such as spreadsheets with project numbers, Plaintiff claims that it cannot easily identify the relationships between the productions and verify that the gaps that Plaintiff suspects are present in those productions actually exist. (*Id.*)

Defendant responds that Plaintiff's RFP is vague; would require overbroad production of irrelevant documents for machines whose design and components are not at issue in this litigation; and that production of documents from before a license agreement

governed the parties' relationship is burdensome and of limited relevance. (Def.'s Mem. Opp'n at 17.) Defendant alleges it has produced comprehensive drawings dating back to at least 2010, but has excluded some drawings because they are of unlicensed equipment and so are not in dispute. (*Id.* at 17.) Defendant claims it is in the process of supplementing its testing results, will do another search for responsive discovery of calculations, and is willing to produce metadata to help Plaintiff understand the relationships between produced materials. (*Id.* at 18.) Finally, Defendant argues that the attorneys'-eyes-only dispute is premature because the parties have not engaged in a meet-and-confer on Plaintiff's concerns. (*Id.* at 18–19.)

The Court holds that Plaintiff's request in RFP No. 2 is both relevant and, with some limitations detailed below, proportional. The Court finds that the requested information from the relatively recent periods when a license agreement governed the parties' relationship, as well as the post-license period after the final, 2016 license agreement terminated, are relevant to the claims and defenses of this action. Discovery productions from these periods should provide the contextual who, what, when, where, why, and how evidence of Plaintiff's transmission of the alleged trade secrets to Defendant, as well as show whether, and to what extent, Defendant continued to use those trade secrets as Plaintiff has alleged. While Defendant is not under any obligation to organize its productions to suit Plaintiff, there must be enough information conveyed in Defendant's productions for Plaintiff to understand which designs correspond to which testing results, component lists, software, calculations, and other technical information. Less than that

risks greatly diminishing otherwise relevant discovery, which in turn slows the progress of this case towards resolution and potentially breeds further discovery disputes.

However, while the relevance of this discovery is abundantly clear, Defendant's RFP as written is overbroad, seeks some irrelevant material, and is for those reasons disproportionate. The Court agrees with Defendant that Plaintiff's request for "all" of Plaintiff's technical information in Defendant's possession would sweep in pre-license periods of limited relevance, and potentially machinery whose parts and sales are not at stake in this litigation. Therefore, the Court orders Defendant to produce: (1) materials responsive to this RFP for the more limited period of September 2, 2009 through September 2, 2019, which will span the 10 most recent years in which the parties operated under a license agreement; and (2) materials responsive to this RFP from the termination of the 2016 license agreement on September 2, 2019 through November 25, 2019, which was the last day before Plaintiff commenced this action. These supplementations should include enough information for Plaintiff to understand which designs correspond to which testing results, component lists, software, calculations, and other technical information. Additionally, Defendant need not produce discovery that relates to machinery that is not placed at issue by any claim or defense in this action, if any such machinery exists. The Court finds these restrictions strike a proportional balance between allowing relevant discovery liberally, while also ensuring it is tailored to the needs of the case. Here, these restrictions as to time and type of machine draw appropriate boundaries, given that the parties are engaged in resource-intensive litigation to protect their respective business

interests, and that the information Plaintiff seeks is by definition in the Defendant's control. Therefore, the Court grants Plaintiff's Motion as to RFP No. 2 with the above limitations.

As to the parties' attorneys-eyes-only dispute, Defendant claims that this dispute is not ripe. (*Id.*) Consequently, the Court orders the parties to meet-and-confer on this dispute **from now until March 11, 2022**, guided by the Court's warning admonitions above, and— only after genuine efforts to discuss the parties' respective positions and objections and to resolve or narrow the disputes on this matter—to bring any remaining narrow, unresolved, ripe disputes to this Court. This may be done through formal motion practice pursuant to Local Rule 7.1 of this Court, or, if the parties choose instead to use this Court's informal dispute resolution process, by submitting concise letters from each respective party to this Court's chambers at docherty_chambers@mnd.uscourts.gov, copying the other party, **on or before March 18, 2022**, as outlined in this Court's *Practice Pointers and Preferences*. *See Magistrate Judge Docherty's Practice Pointers* at 3–4.

### 2.    RFP No. 6

RFP No. 6 asks Defendant to produce "[a]ny documents that relate to HMBV's supposed independent development of the Equipment's design." (Pl.'s Ex. A at 6.) Plaintiff repeats its contention from arguments offered to support RFP No. 2 that if Defendant's claim that it designed and developed its own trade secrets were true, Defendant's production supporting that claim in response to RFP No. 6 should be much greater in quantity than it is. (Pl.'s Mem. Supp. at 16–17.) Plaintiff contends that, during meet-and-confers, Defendant repeatedly objected to the basic term "equipment," alleging its vague meaning made it hard to determine which documents might be responsive to this RFP, and

leaving Plaintiff unsure whether this objection is blocking some or most responsive discovery based on a technicality. (*Id.* at 16.) Plaintiff also claims that what has been produced includes evidence of two independently designed vacuum disc coolers, but that such productions have been unaccompanied by any communications or testing documents as required by this RFP. This evidence also identifies persons who apparently played a role in this equipment's development, but the specifics of their involvement have not been described in any documentation. (*Id.* at 17.) Defendant responds that Plaintiff's RFP is vague and would require overbroad production of irrelevant documents because, until Plaintiff discloses the specific contours of each allegedly misappropriated trade secret in response to Defendant's Interrogatory No. 1, Defendant cannot tailor its discovery responses based on what is relevant to the claims and defenses in this action. (Def.'s Mem. Opp'n at 20–22.) Defendant claims that it has not produced discovery for at least one of the alleged entities that Plaintiff believes developed relevant equipment because that entity did not, in fact, work on any equipment relevant to this action. (*Id.* at 21.)

The Court holds that Plaintiff's request in RFP No. 6 is relevant, but that whether it is proportional is not yet clear. Documents that show any designs for the Solidaire, TorusDisc, or Turbulizer, or similar products that Defendant claims it has independently developed, are unquestionably relevant to discovering evidence of any overlapping proprietary claims to the trade secrets at issue in this case, and to resolving those disputed claims.

However, the Court finds that it would be inefficient and contrary to Rule 26's proportionality analysis to compel discovery that is overbroad considering the contours of

the disputed trade secrets. The Court cannot determine, though, whether the sought discovery is overbroad, because Plaintiff has not yet supplemented its response to Defendant's Interrogatory No. 1 by providing detailed descriptions of each trade secret that was allegedly misappropriated. The Court will not order Defendant to produce designs of devices that are not placed at issue by this action. Therefore, once Plaintiff has supplemented its response to Defendant's Interrogatory No. 1, as required by the Court's earlier Order (*see* Feb. 4 Order at 8–11), thereby providing Defendant with detailed descriptions of each allegedly misappropriated trade secret, Plaintiff shall appropriately supplement its production to RFP No. 6 given the Court's holding that this RFP seeks relevant information.

If supplementation is indeed required, that supplementation shall include exactly what this RFP calls for: "documents that relate to HMBV's supposed independent development of the Equipment's design." (Pl.'s Ex. A at 6.) If Defendant has independently designed and developed products similar to the Solidaire, TorusDisc, or Turbulizer, those similar products are relevant equipment and Defendant shall produce materials relating to those products in compliance with this Order. If Plaintiff's supplementation of its response to Interrogatory No. 1 places other equipment beyond these three pieces of equipment (or their near equivalents) at issue, then Defendant shall produce materials relating to those other pieces of equipment in compliance with this Order. For example, where Plaintiff's supplementation identifies specific calculations or tests that are trade secrets, if Defendant used those specific calculations or tests to develop equipment previously believed to be outside the scope of the disputed equipment, Defendant would need to supplement its

13

response to this RFP to include the production of relevant materials about the newly-in-dispute equipment. However, at this time, the Court denies Defendant's Motion as to this RFP because, although the discovery's relevance is clear, its proportionality cannot yet be determined.

### 3. RFP No. 7

RFP No. 7 asks Defendant to produce "[a]ny documents relating to sales or potential sales of the Equipment by HMBV." (Pl.'s Ex. A at 6.) Plaintiff argues that this discovery is relevant to its claims and alleged damages, particularly where Defendant argues that it entered into post-license sales before the 2016 license agreement expired and that those sales should be excluded from any damages calculation. (Pl.'s Mem. Supp. at 18.) Plaintiff also hopes to discover how Defendant characterized the equipment to customers for post-license sales to determine if Defendant marketed them as newly developed products, or still as Bepex Solidaires, TorusDiscs, or Turbulizers. (*Id.*) Plaintiff argues that, although Defendant has produced two spreadsheets of alleged sales, each lacks various critical details such as prices, dates, royalties, project or other identifying internal reference numbers, design drawings, testing, and/or customers. (*Id.* at 18–19.) Furthermore, Plaintiff alleges that Defendant has not produced any contracts, bids, or communications for these sales. (*Id.* at 19.) Regarding proportionality, Plaintiff contends that the approximate number of machines at issue is 20, and that the burden of producing documentation for the equipment designed, tested, and sold to 20 respective customers on particular dates is not a herculean task. (*Id.* at 19–20.)

14

Defendant responds that Plaintiff's RFP is vague and has been reworded by Plaintiff during discovery to request royalty payments. (Def.'s Mem. Opp'n at 22–23.) Defendant alleges that it has produced information about the four total orders that it accepted before the 2016 license agreement's termination but fulfilled afterward. (*Id.* at 23.) Defendant declines to produce documentation of "potential sales" as requested by this RFP, including any processes or procedures undertaken that did not result in sales of the disputed equipment, because such information is irrelevant to the instant action. (*Id.*) Finally, Defendant argues that Plaintiff grossly underestimates the number of machines produced, arguing there have been 58 machines sold, almost all of which Defendant sold before 2013, making production of sales-related documents for most of these machines unduly burdensome to locate, and irrelevant to Plaintiff's 2016 license agreement which did not govern these sales. (*Id.* at 23–24.)

The Court holds that Plaintiff's request in RFP No. 7 is relevant and proportional, subject to some limitations. Whatever the contours of the allegedly misappropriated trade secrets may be, there is no dispute that the equipment sales that took place during the license period did not involve the misappropriation of trade secrets. Those sales before the expiration of the 2016 license agreement are irrelevant to Plaintiff's alleged damages, except as detailed below, but those sales after the expiration of that license agreement are relevant. Defendant's riposte to Plaintiff's contention that it sold machines containing trade secrets after the license period—and therefore misappropriated trade secrets—is apparently to say that any sales finalized after the license period were only of orders placed during the license period. Documents responsive to RFP No. 7 will be relevant evidence of whether

it is Plaintiff's or Defendant's version of events that is accurate. This makes some sales-related documentation from the license period relevant to clarify the precise quantity of equipment and connected damages (if any) at issue in this action. Finally, documents relating to the "potential sales" of the disputed equipment are without relevance to Plaintiff's damages, as no sales actually resulted, and Defendant cannot have wrongly benefitted from them. Therefore, Defendant need not produce data about potential sales.

Based on the above relevance analysis, the Court holds that Defendant shall produce documents relating to sales of the disputed equipment for which it finalized sales agreements during the license period, but which were delivered after the license agreement expired. Defendant shall also produce documents showing sales of equipment involving the disputed trade secrets for which sales agreements were finalized after the license period. For each sale, Defendant shall produce comprehensive responsive documents, including, but not limited to, project or other identifying internal reference numbers; any related bidding or contractual documents; financial documents showing prices and related royalties; dates of sale or delivery to specific, identified customers; communications related to each sale; and any design drawings, testing, calculations, or other processes and procedures undertaken to satisfy the customer's order. In producing these documents, Defendant shall indicate to which sale each document corresponds. Additionally, the Court finds that royalties for these sales are encompassed in the RFP's request for "[a]ny documents relating to sales" and Defendant must produce them. (Pl.'s Ex. A at 6.) Such productions may also require supplementation once Plaintiff has supplemented its response to Defendant's Interrogatory No. 1. (*See* Feb. 4 Order at 8–11.) The Court finds that

production of this relevant sales-related information is important to resolving the damage-related issues at stake in this action and will provide clarity about the amount in controversy. Information about these sales is primarily within the Defendant's control, and its production is proportional considering that if Defendant sold no relevant equipment after the license period, this discovery could resolve most—if not all—of the issues in this action. Thus, the burden or expense of this discovery is outweighed by the likely benefit of determining what sales have occurred after the license period, and if there were any, how Defendant characterized them. Therefore, the Court grants Plaintiff's Motion as to RFP No. 7 as limited above.

### 4.    RFP No. 10

RFP No. 10 asks Defendant to produce "[a]ny communications between HMBV and any Related Company regarding the Licenses, the Equipment, Trade Secrets, or any Technical Information." (Pl.'s Ex. A at 7.) Plaintiff argues that, despite the relevance of this RFP to its claims in this action, Defendant has failed to produce any responsive materials because it claims that the definition of "Related Company" is vague. (Pl.'s Mem. Supp. at 20.) Plaintiff defined this term in its RFP requests as follows: "The term 'Related Company' shall mean any company in the Hosokawa family of companies." (Pl.'s Ex. G at 2, Dkt. No. 54-1.) Plaintiff contends that communications between HMBV and its parents and co-subsidiaries in relation to the disputed equipment are relevant to whether Defendant willfully breached the 2016 license agreement and misappropriated Plaintiff's trade secrets, particularly where its defenses include alleged pre-existing licenses with its parents and subsidiaries. (*Id.* at 21.) Defendant objects to the term "Related Company" as

follows: "The Definition of 'Related Company' or [']Related Companies' is objectionable because it purports to reach and bind entities that are not involved in this litigation and who do not possess any information relevant to discovery." (Pl.'s Ex. A at 4.) In its Memorandum opposing Plaintiff's Motion, Defendant responds that it has produced everything responsive to this RFP, and Plaintiff cannot compel it to produce what does not exist. (Def.'s Mem. Opp'n at 25.) Defendant adds nuance to this in Mr. Jay's Declaration as follows: "Upon reasonable inquiry, I conclude that HMBV has already produced all communications with HMBV's sister and parent companies regarding the Licenses, the Equipment, Trade Secrets, or any Technical Information, as this Request is understood by HMBV." (Def.'s Jay Decl. ¶ 10, Dkt. No. 78.)

The Court holds that while Plaintiff's request in RFP No. 10 is relevant, Defendant claims it has produced everything responsive to this discovery request. Whatever the contours of the allegedly misappropriated trade secrets wind up being (and as the Court has noted several times in this Order, that is a question whose answer will not be known until there is a supplementary response from Plaintiff to Defendant's Interrogatory No. 1), this RFP is relevant to Plaintiff's claims of trade secret misappropriation. It is also relevant to HMBV's defenses that it developed the equipment in question using either publicly available information, or information rightfully acquired from an independent source. (Def.'s Answer at 9–10, Dkt. No. 15.)

As to proportionality, when a party asserts that it has nothing more to produce, Courts generally take them at their word. *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (citation omitted) ("[T]he Court must accept, at face

18

value, a party's representation that it has fully produced all materials that are discoverable."). Yet here, Defendant does not merely assert that it has diligently searched for responsive materials and has fully produced them; Plaintiff argues that Defendant also claims that, if it understood what "Related Company" means, presumably it might have more to produce to Plaintiff. (Pl.'s Mem. Supp. at 20.) Given the importance of ensuring relevant and proportional discovery is duly produced in response to RFP No. 10, the Court orders Defendant to supplement its productions with a complete list of its related companies—including all parents or co-subsidiaries—during the 2016 licensing period up until Plaintiff commenced this action, and to note, for each entity, whether it produced discovery relevant to this RFP, and why or why not. It may be true that Defendant has diligently searched for and produced all materials relevant to RFP No. 10, and the Court finds that, without more specifically identified gaps in Defendant's productions, ordering additional production of these materials is futile. Yet the Court also finds that, given Defendant's qualified language regarding its responsive productions to this RFP—nuances that suggest Defendant may be withholding some information on a potentially mistaken belief that it is not relevant—it is proportional to order this limited supplementation from Defendant. This is particularly the case where communications responsive to this RFP are solely in Defendant's control and may offer significant facts that directly bear on the issues at stake in this resource-intensive litigation. Therefore, the Court grants Plaintiff's Motion as to RFP No. 10 as set forth above.

Additionally, this holding does not relieve Defendant of supplementing its productions relating to this RFP should new discovery production highlight gaps in

Defendant's response. In particular, the Court directs Defendant to carefully study the productions ordered by the Court in its earlier Order on Defendant's Interrogatory No. 1 (*see* Feb. 4 Order at 8–11), and to supplement its response to this RFP as necessary based on Plaintiff's supplementation.

### 5.    RFP No. 12

RFP No. 12 asks Defendant to produce "[a]ny documents that related to the expenditures that HMBV incurred in supposedly designing the Equipment." (Pl.'s Ex. A at 7.) Plaintiff argues that, if Defendant had actually designed and developed its own trade secrets as claimed, then Defendant's production should reflect those efforts in a greater quantity of produced materials than Plaintiff is seeing in Defendant's current production. (Pl.'s Mem. Supp. at 22.) Defendant responds that it has produced everything that is responsive to RFP No. 12 but anticipates that it may need to supplement its response to this RFP once Plaintiff has supplemented its response to Defendant's Interrogatory No. 1. (Def.'s Mem. Opp'n at 25.)

The Court holds that while Plaintiff's request in RFP No. 12 is relevant, as with RFP No. 10, Defendant claims it has produced everything responsive to this discovery request. Whatever the contours of the allegedly misappropriated trade secrets may be, this RFP calls for productions that are relevant to whether Defendant independently developed machinery incorporating those alleged trade secrets, which bears directly on liability. As to proportionality, the Court holds that the analysis is similar to that above for RFP No. 10, because where a party claims that they have fully produced responsive materials, courts generally take them at their word. *See Prokosch*, 193 F.R.D. at 637 (citation omitted).

Because ordering Defendant to supplement its discovery would, at present, have no practical effect, the Court denies Plaintiff's Motion as to RFP No. 12. The Court notes, however, that this does not relieve Defendant of its future duty to supplement this RFP as new discovery may require.

### 6.    RFP No. 18

RFP No. 18 asks Defendant to produce "[a]ny documents relating to HMBV's calculation of any royalty owed to Bepex under the Licenses." (Pl.'s Ex. A at 9.) Plaintiff argues that Defendant has produced limited, disorganized documents in response to this RFP, and that comprehensive production of documents relating to unpaid royalties has relevance for Plaintiff's breach of license agreement claim and its damages calculations. (Pl.'s Mem. Supp. at 22.) Defendant responds that it owes Plaintiff no royalties, but, despite this, has produced everything responsive in its possession, including a schedule of royalty amounts paid. (Def.'s Mem. Opp'n at 26.) Defendant also contends that royalties are not at issue in this case and royalty payments are, therefore, irrelevant. (*Id.*)

The Court holds that RFP No. 18 is relevant and, as limited below, proportional. Because trade secrets do not have easily ascertainable inherent value, courts may look to royalties as a measure of damages. *See Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1243 (8th Cir. 1994) (citations omitted) ("Courts have used a wide variety of methods to measure damages in trade secret cases, including lost profits, unjust enrichment and reasonable royalty."). Which method is most useful in any given case will be highly fact dependent. *Id.* at 1244. Here, Plaintiff alleges that Defendant misappropriated Plaintiff's trade secrets, and that when a licensing agreement governed the

parties, Defendant and Plaintiff had a royalty arrangement. (Pl.'s Ex. A at 2, Dkt. No. 1-1.) Had sales of machinery incorporating those trade secrets continued to be authorized by a license, presumably Defendant would have continued to pay such royalties at a similar rate. Thus, the calculation of royalties during the license period is relevant to Plaintiff's alleged damages calculation as a rate from which it can extrapolate.

The Court holds that ordering royalty information from the entire license period would not be proportional to the needs of the case. Because the parties had not negotiated royalties for the post-license period during which the alleged trade secret misappropriations occurred, any calculation of what those royalties should have been will merely be an approximation, not a certainty. Moreover, the full duration of the license period's royalty payments does not appear necessary to make this approximation. The Court finds that a period ending at the termination of the 2016 license agreement, and beginning five years before that date, should provide Plaintiff with enough data from which to extrapolate a reasonable lost royalties estimate for alleged misappropriations. Such proportionally limited production of this relevant information is important to resolving the damage-related issues at stake in this action and will provide clarity about the amount in controversy. Defendant's documentation of these royalty calculations is also wholly within the Defendant's control and is important to resolving the issues in this resource-intensive action. Thus, the burden or expense of this discovery is outweighed by the likely benefit of estimating what royalty payments would have occurred after the license period based on Plaintiff's allegations in this action, if any. Therefore, the Court grants Plaintiff's Motion as to RFP No. 18 as limited above.

### B.    Interrogatories at Issue

Plaintiff also asks the Court for an order compelling Defendant to supplement its responses to Interrogatory Nos. 4, 5, 7, 8, 9, and 10. Each request, or group of requests, will be discussed in turn.

### 1.    Interrogatory Nos. 4 and 7

The Court will consider Interrogatory Nos. 4 and 7 together, as they both pertain to Defendant's alleged independent development of equipment. Interrogatory No. 4 asks Defendant to

> [i]dentify any trade secrets that HMBV has independently developed in relation to the Equipment. For any trade secret identified, disclose who developed it, the development costs, any value HMBV has placed on the trade secret, the dates it was developed, the drawing number of any design that contains the trade secret, and the reasonable measures HMBV takes to protect the trade secrets.

(Pl.'s Ex. B at 11–12, Dkt. No. 68.) Interrogatory No. 7 asks Defendant to "[i]dentify anyone HMBV uses to manufacture the Equipment or subassemblies of the Equipment. For any such supplier, identify what was supplied, the type of Equipment involved, and the date materials were provided. For each supplier disclose whether that supplier has contractual non-disclosure or confidentiality obligations to HMBV." (Pl.'s Ex. B at 13–14.)

Plaintiff argues that Interrogatory No. 4 is in response to Defendant's allegedly disorganized productions that lack corresponding bates numbers connecting documents produced to each particular trade secret—including gaps in Defendant's trade secret development costs, the value of its trade secrets, and the measures it has taken to protect

them. (Pl.'s Mem. Supp. at 25.) Plaintiff claims that Interrogatory No. 7 is relevant because the types of confidentiality obligations imposed by Defendant upon manufacturers could show the measures—or lack thereof—that Defendant has taken to protect its trade secrets. (*Id.* at 27.) Plaintiff argues that, to date, Defendant has only identified a single manufacturer, and has not identified any confidentiality agreement with the manufacturer or date it provided Defendant with materials. (*Id.*)

Defendant responds that it has produced a list of everything relevant to these Interrogatories in its possession, and that the list is short because its own trade secrets have not been valued, are unrelated to the equipment at issue, and, thus, are not responsive to this Interrogatory. (Def.'s Mem. Opp'n at 28.) Regarding manufacturers, Defendant argues that Interrogatory No. 7 seeks irrelevant information for machines that are not at issue. (*Id.* at 29.) For both Interrogatories, Defendant also contends that Plaintiff has failed to diligently examine what Defendant has produced and would discover more responsive information in Defendant's materials if it did so. (*Id.* at 28–29.) For Interrogatory No. 4, Defendant also offers to supplement its responses with metadata so that Plaintiff can more easily understand the relationships between the documents that Defendant has produced. (*Id.*)

The Court holds that the discovery sought in Interrogatory Nos. 4 and 7 is relevant, as limited below, but that more information is required to make a proportionality determination. If the parties each possess overlapping trade secrets in relation to the disputed equipment, those overlapping trade secrets would be relevant to this action. However, requesting identification of, and disclosure about, every trade secret Defendant

24

has developed in relation to the equipment in dispute may involve trade secrets that are unrelated to those at issue in this action, and are, therefore, irrelevant to its resolution.

As to proportionality, as noted previously, courts generally take parties at their word when a party asserts that it has nothing more to produce. *See Prokosch*, 193 F.R.D. at 637 (citation omitted). It would, therefore, have no practical effect for the Court to order Defendant to supplement its discovery as to these Interrogatories. Thus, the Court denies Plaintiff's requests as to Interrogatory Nos. 4 and 7 except as to the following interactive process.

Given the importance of the discovery that has allegedly already been produced in response to these Interrogatories, **between now and March 11, 2022**, the parties shall engage in a robust meet-and-confer process, guided by the Court's warning admonitions about the meet-and-confer process both above in this Order, and in its earlier Order (*see* Feb. 4 Order at 7–8), during which time Defendant shall walk Plaintiff through what Defendant has produced in response to these Interrogatories. Once the parties have completed this process, remaining disputes regarding supplementation required by these Interrogatories, if any, shall be the subject of formal motion practice pursuant to Local Rule 7.1 of this Court, or, if the parties choose instead to use this Court's informal dispute resolution process, shall be submitted in concise letters from each respective party to this Court's chambers, copying the other party, **on or before March 18, 2022**, as outlined in this Court's *Practice Pointers and Preferences*. *See Magistrate Judge Docherty's Practice Pointers* at 3–4.

## 2.    Interrogatory No. 5

Interrogatory No. 5 asks Defendant to "[l]ist the drawing numbers for all Equipment that HMBV manufactured during the License Period or after the License ended." (Pl.'s Ex. B at 12.) Plaintiff claims that this Interrogatory seeks discovery relevant to comparing pre- and post-license period equipment to determine whether Defendant is indeed appropriating Plaintiff's trade secrets, or has instead independently developed its own, as well as to determining its damages. (Pl.'s Mem. Supp. at 26.) Plaintiff argues that Defendant has produced four drawings representing only equipment ordered during the license period but fulfilled after its expiration, and that this meager production does not represent everything responsive to Plaintiff's Interrogatory—nor is production for less than 20 units of equipment burdensome to provide. (*Id.*) Defendant responds that it has fully produced in response to this Interrogatory, including identifying drawing numbers for trade secrets dating back to 2004, as well as drawings for the two post-license period vacuum disc coolers that it claims are not relevant to this this action. (Def.'s Mem. Opp'n at 29.) Defendant further argues that producing a list of drawing-related discovery appears irrelevant to the claims and defenses in this action and, is, therefore, disproportionate. (Def.'s Mem. Opp'n at 29.)

The Court holds that Plaintiff's request in Interrogatory No. 5 is both relevant and, subject to the limitations outlined below, proportional. A comparison of equipment drawings from the license and post-license periods has direct relevance to the claims and defenses at issue in this action. If the drawings from both eras are identical, or if they have alterations so slight that they continue to plausibly support Plaintiff's misappropriation

allegations, such evidence—or its opposite—is directly related to the core issues of this case.

Regarding proportionality, Defendant claims it has produced a list of the drawing numbers for the post-license period equipment that it has independently developed, and the Court takes Defendant at its word that ordering further supplementation would be futile. *See Prokosch*, 193 F.R.D. at 637 (citation omitted). As to license period drawing numbers, whether the drawings Plaintiff alleges that Defendant has produced are representative of all license period drawings or not, drawings from within the license period are relevant, and some production of those drawing numbers is proportional. Plaintiff and Defendant continue to dispute the total number of machines at issue in this action. The Court finds that ordering the production of a list of drawing numbers for 20 machines is proportional to the needs of this case, given that Plaintiff estimates such data would be sufficient to make the comparison that the Court finds is relevant in its above discussion. The Court also finds that producing drawings for 20 machines does not appear onerous; that the productions go directly to the issues at stake to be resolved in this resource-intensive litigation; and that the burden or expense of this discovery is outweighed by the likely benefit of determining whether the drawings for license and post-license periods support the claims or defenses asserted in this action.

Thus, the Court grants Plaintiff's Motion as to this Interrogatory, and Defendant shall produce a list of drawing numbers for the equipment designed and sold for the past 20 machines, beginning with those most recently designed and sold, and stretching back until the full 20-machine drawings limit is reached. This number shall include any already-

produced license period drawing numbers. In producing this list, Defendant shall indicate to which sale each drawing number corresponds to avoid exacerbating the parties' disputes over disorganized productions.

### 3.    Interrogatory No. 8

Interrogatory No. 8 asks Defendant to

> [i]dentify any distributors, sales representatives, or wholesalers that HMBV uses to sell the Equipment. For anyone identified, describe any communications that HMBV has had with them regarding HMBV's obligations under the Licenses, Bepex's Trade Secrets or Technical Information, HMBV's trade secrets, or this litigation. You should also identify any non-disclosure or confidentiality agreement with any party identified in your answer.

(Pl.'s Ex. B at 14.) Plaintiff argues that this Interrogatory is relevant to how Defendant communicated about Plaintiff's trade secrets during and after the license period, as well as to Plaintiff's damages. (Pl.'s Mem. Supp. at 28.) Plaintiff claims that Defendant has produced only two emails that it sent to a large mailing list regarding the termination of the 2016 license agreement, but has not identified if any of those recipients are individuals responsive to this Interrogatory. (*Id.*) Plaintiff also argues that these two emails cannot be the totality of what is responsive to this Interrogatory. (*Id.*) Defendant claims that this Interrogatory lacks proportionality because it seeks irrelevant information about the identities of distributors, sales representatives, or wholesalers with whom Defendant communicated during the license period, yet Plaintiff has not alleged that Defendant improperly disclosed trade secrets to third parties during the license period. (Def.'s Mem. Opp'n at 31.) As to the mailing list that Plaintiff references, Defendant contends that it is

currently reviewing the entities on the mailing list to determine if their identification is responsive to this Interrogatory. (*Id.*)

The Court holds that Plaintiff's request in Interrogatory No. 8 is relevant and, subject to some limitations, proportional. What Defendant communicated with distributors, sales representatives, or wholesalers about its obligations to Plaintiff during the post-license period is relevant to whether Defendant characterized the disputed equipment as trade secrets, as well as whether it observed its obligations—or flagrantly disregarded them—in its post-license period equipment sales. If the identified distributors, sales representatives, or wholesalers had a non-disclosure or confidentiality agreement with Defendant during the post-license period in relation to the sale of disputed equipment in this action, those agreements would be relevant to Defendant's representations about its equipment. Such agreements are also relevant to Plaintiff's allegation that Defendant actions were "willful and malicious." (Compl. ¶¶ 28, 33.) However, identifying distributors, sales representatives, or wholesalers and their agreements with Defendant during the license period is irrelevant information because the parties do not dispute that Defendant complied with the license agreements during the license period.

The Court holds that it is proportional to the needs of the case that Defendant diligently search for information that is responsive to Interrogatory No. 8 for the post-license period—and for that period only. Plaintiff alleges that Defendant "willfull[y] and malicious[ly]" misappropriated Plaintiff's trade secrets and, therefore, evidence of Defendant's conduct related to its post-license sales of equipment put at issue by this action is relevant and proportional. (Compl. ¶¶ 28, 33.) These communications are in Defendant's

control, cover a limited period, and go to issues of party admissions and of willfulness at stake in this resource-intensive action. Because the Court finds that the burden of supplementing this discovery is outweighed by its likely benefit, Defendant shall fully respond to Interrogatory No. 8 as to the post-license period.

### 4.    Interrogatory No. 9

Interrogatory No. 9 asks Defendant to

[i]dentify any customers or potential customers for the Equipment that contacted HMBV regarding purchasing the Equipment during the period of the last License or after the end of the License. For each such customer, provide the date of the initial contact, the date that HMBV provided a quote, and the amount of the quote, the date of any purchase order, the amount of any purchase order, and the date of any confirmation of the purchase order.

(Pl.'s Ex. B at 15.) Plaintiff contends that Defendant has responded by listing only four orders "accepted before notice of termination[]"; has failed to provide information on post-license period sales, orders, or customers; and has directed Plaintiff to Defendant's response to another Interrogatory that does not discuss the information sought in this Interrogatory. (Pl.'s Mem. Supp. at 28–29.) Plaintiff argues that the requested discovery about post-license period business is relevant to its trade secret misappropriation claims and to its resulting damages. (*Id.* at 29.) Defendant responds that it has provided "the most relevant information, i.e., sales information pertaining to the machines whose status as licensed equipment is in dispute and the two unrelated [vacuum disc coolers]," but will search again for other specific responsive documents. (Def.'s Mem. Opp'n at 32.)

The Court holds that Plaintiff's request in Interrogatory No. 9 is both relevant and proportional and orders Defendant to supplement its response to this Interrogatory. When

Defendant interacted with customers, what information it provided to them, and the details of alleged sales of the disputed equipment during the final license and post-license periods are directly relevant to Plaintiff's claims of breach of license agreements and trade secret theft. Such information is also relevant to Defendant's alleged willfulness and Plaintiff's alleged damages. Furthermore, the length of time for which discovery is sought is limited, only spanning between September 2, 2016 to the commencement of this action. These customer-related interactions are in the Defendant's control, and their identification is important to resolving issues at the heart of this case about what Defendant did—or did not do—with Plaintiff's trade secrets during and after its transition into the post-license period. Thus, the burden or expense of this discovery is outweighed by its likely benefit, and the Court grants Plaintiff's Motion as to Interrogatory No. 9.

### 5.    Interrogatory No. 10

Interrogatory No. 10 asks Defendant to

> [f]or each piece of Equipment that HMBV sold under the Licenses, identify any testing that HMBV did that impacted the design of the Equipment and the modifications that HMBV made to the Equipment design as a result of said testing. You should identify who conducted the testing, the date of the testing, and if the testing was conducted by a third party the amount HMBV paid for the testing.

(Pl.'s Ex. B at 16.) Plaintiff argues that Defendant's response is vague and merely asserts that tests are performed for each customized piece of equipment it designs and manufactures, but is devoid of any specific customer orders that required tests, testing dates, types of tests, or individuals who conducted such tests. (Pl.'s Mem. Supp. at 29–30.) Plaintiff alleges that, if Defendant did independently develop custom equipment, it should

have identified far more in response to this Interrogatory than it has. (*Id.* at 30.) Plaintiff claims that the discovery sought is fundamentally relevant to any trade secret action that centers on a dispute over lawful or unlawful benefit from an alleged trade secret. (*Id.*) In response, Defendant argues that it inadvertently failed to produce testing results for equipment orders going back to 2010, but is in the process of producing these documents and supplementing its response to Interrogatory No. 10. (Def.'s Mem. Opp'n at 32.) Defendant objects, however, to any supplementation to add pre-2010 testing because such information is not reasonably accessible. (*Id.*)

The Court holds that Plaintiff's request in Interrogatory No. 10 is relevant and, as limited below, proportional. This discovery is relevant to Defendant's familiarity with the alleged trade secrets at issue, as Defendant's willingness to supplement its productions and responses regarding this information concedes. However, the Court agrees that the approximately 10 years of such relevant information that most immediately precedes the post-license period is proportionate to the needs of the case, and that pre-2010 information cannot offer significant additional relevant information and would, therefore, be disproportionate to produce. Information about Defendant's testing-related efforts are in Defendant's control, and this information is important to resolving the issues in this resource-intensive litigation. Therefore, the burden or expense of this discovery is outweighed by its likely benefit, and the Court grants Plaintiff's Motion as to Interrogatory No. 10 and orders Defendant to supplement its response to it as set forth above.

## IV.    CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiff Bepex International, LLC's Motion to Compel Discovery from Defendant Hosokawa Micron BV (Dkt. No. 51) is **GRANTED** in part and **DENIED** in part as set forth above;

2.    The parties shall accompany any future discovery disputes in this case with a meet-and-confer statement that meets the requirements set out on pages six and seven above; and

3.    This Order shall be unsealed in its entirety 30 days from the date it is filed, unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information referred to in this Order, and shall file a joint letter and proposed redacted order within 14 days from the date this Order is filed, identifying with specificity the redactions they believe are required and the basis for those redactions.

Dated: February 8, 2022                         *s/ John F. Docherty*
                                                JOHN F. DOCHERTY
                                                United States Magistrate Judge