## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BEPEX INTERNATIONAL, LLC,

          Plaintiff,

v.

HOSOKAWA MICRON BV,

          Defendant.

Case No. 19-CV-2997 (KMM/JFD)

**ORDER ON PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER**

**FILED UNDER SEAL**

This matter is before the Court on Plaintiff Bepex International, LLC's ("Bepex") Motion to Amend the Scheduling Order and for a Protective Order (Dkt. No. 103). This Court held a motions hearing on April 14, 2022, at which Jeffrey Post, Christian Hokans, and Melissa Hodge represented Plaintiff, and Jonathan Jay and Roger Masson represented Defendant. (Hr'g Mins. at 1, Dkt. No. 152; Hr'g Tr. at 1, Dkt. No. 155.)

Plaintiff moves to (1) extend the Pretrial Scheduling Order's deadlines for fact discovery and non-dispositive motions related to it, expert discovery and non-dispositive motions related to it, dispositive motions, and trial readiness; and (2) for a protective order to temporarily preclude Defendant Hosokawa Micron BV ("HMBV") from noticing a deposition of a corporate entity under Federal Rule of Civil Procedure 30(b)(6)). (Pl.'s Mem. Supp. at 1, Dkt. No. 111; Pl.'s Proposed Fifth Am. Pretrial Sched. Order at 1–2, Dkt. No. 113.) In response to Plaintiff's Motion, Defendant HMBV interposes objections and asks the Court to deny the Motion entirely. To resolve these disputes, the Court orders only those amendments and protections for which good cause exists. Therefore, Plaintiff's Motion is granted in part and denied in part, as set forth below.

## I.    BACKGROUND

This is a case about two companies that design, manufacture, and sell custom equipment for industrial machines. For decades, the parties operated under license agreements that allowed them to share trade secrets, but when their final license agreement, entered in 2016, expired on September 2, 2019, Bepex alleges that HMBV continued to use Bepex's trade secrets without legal permission, and, consequently, filed this action seeking relief for HMBV's alleged thefts. (Compl. ¶¶ 9, 21, 27–28, Dkt. No. 1.) The three pieces of equipment at issue in this action are Solidaire paddle dryers, TorusDisc disc dryers, and Turbulizer paddle mixers, all of which are used to build machines that can mix and/or dry industrial materials. (*Id.* at 1.)

Bepex filed this case on November 26, 2019, and the case will be three years old on November 26, 2022. (*See* Compl.) The parties stipulated to extend HMBV's time to answer or otherwise respond to Bepex's Complaint three times to facilitate private mediation of their disputes, which were delayed by the selected mediator's schedule and various impacts of the COVID-19 outbreak. (Dkt. Nos. 6, 10, 12.) Thus, Defendant did not file its answer until October 30, 2020. (Dkt. No. 15.)

 The initial Scheduling Order has been amended four times. (Dkt. Nos. 20, 34, 42, 87, 96.) According to the operative Fourth Amended Pretrial Scheduling Order, the parties have just finished discovery on April 4, 2022. (Fourth Am. Pretrial Sched. Order at 1–2, Dkt. No. 96.) Any non-dispositive motions relating to discovery had to be filed by April 18, 2022, under that Order, a date which has passed during the pendency of Plaintiff's Motion. (*Id.*) The parties are currently in expert discovery, which is scheduled to be

completed no later than May 27, 2022, followed by dispositive motions (to be filed by June 20, 2022). (*Id.*) The case is to be ready for trial by September 26, 2022. (*Id.*)

The instant Motion concerns discovery disputes. Discovery for this case began in January 2021. Plaintiff served its first Requests For Production ("RFP") on Defendant in mid-January 2021, and its first Interrogatories in mid-February 2021. (Pl.'s Mem. Supp. Mot. Compel at 5–6, Dkt. No. 52.) Defendant served its RFP responses on Plaintiff in mid-March, but Plaintiff alleges it took Defendant until the end of June to produce any documents. (*Id.* at 5.) Defendant served its first interrogatory responses on Plaintiff in mid-July, approximately five months after receiving Plaintiff's first set of interrogatories. (*Id.*)

The parties filed cross-Motions to Compel in October 2021, asking the Court to resolve 21 discrete discovery disputes that the parties were unable to resolve on their own. (Dkt. Nos. 45, 51.) The Court granted in part and denied in part both Motions in February 2022 and required both parties to supplement some of their discovery responses. (Dkt. Nos. 97, 98.)

Plaintiff filed the instant Motion on March 25, 2022—30 days before the deadline for the close of discovery—and the Court scheduled a motion hearing for April 14, 2022. In its Motion, Bepex argues that good cause exists to modestly extend fact discovery and the subsequent case deadlines because HMBV has delayed producing responsive discovery, wrongly shielded discovery as Attorneys' Eyes Only ("AEO"), and because there have been unexpected delays beyond the parties' control. (Pl.'s Mem. Supp. at 1.) Plaintiff also contends that good cause exists for the Court to issue a protective order to shield Bepex's representative from a 30(b)(6) deposition until after all supplemental

3

discovery has been produced and reviewed, and until after Bepex's concerns about AEO-shielded discovery have been resolved. (*Id.* at 1–2.) Defendant opposes Plaintiff's Motion, arguing that no good cause exists to further delay the resolution of this costly case that has limited its potential sales while imposing litigation expenses, and that, consequently, the Court should deny Plaintiff's Motion entirely. (Def.'s Mem. Opp'n at 1, Dkt. No. 134.)

On March 31, 2022—six days after Bepex filed the instant Motion—Defendant also filed a Motion, and the Court scheduled oral arguments on Defendant's Motion to be heard during the same April 14, 2022 hearing as the arguments for Plaintiff's Motion. (Def.'s Mot., Dkt. No. 114.) In its Motion, Defendant argued that a second tier of AEO protection was necessary for some documents that contained trade secrets whose disclosure would place it at a competitive disadvantage if current employees of Bepex were permitted to view those secrets. (Def.'s Mem. Supp. at 1, 3, Dkt. No. 119.) Ruling from the bench at the April 14, 2022 motions hearing, the Court granted in part and denied in part Defendant's Motion for AEO protection, although it modified the relief sought to permit "an entity with the technical expertise to interpret AEO-designated information on behalf of Bepex" to view AEO-tier documents. (Hr'g Mins. at 1–2; *see also* Hr'g Tr. at 21:16–22:15.)

With this background in mind, the Court turns to the Motion before it.

## II.    GOVERNING LAW

Pretrial scheduling orders are "a vehicle designed to streamline the flow of litigation through [the federal courts'] crowded dockets." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Federal Rule of Civil Procedure 16(b)(4) provides that a pretrial schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ.

P. 16(b)(4). "'The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.'" *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) ("'[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.'"). The District of Minnesota's Local Rule 16.3 also governs modifications to a scheduling order. *See* D. Minn. L.R. 16.3. Pursuant to that Rule, "[a] party that moves to modify a scheduling order must: (1) establish good cause for the proposed modification[;] and (2) explain the proposed modification's effect on any deadlines." D. Minn. LR 16.3(b). "If the court is satisfied that the movant was diligent, it will also generally consider possible prejudice to the nonmovant." *Shank v. Carleton College*, 329 F.R.D. 610, 614 (D. Minn. 2019) (citing *Sherman*, 532 F.3d at 717).

"[W]hile diligence is the primary factor for assessing good cause, nothing limits the Court's 'broad discretion in establishing and enforcing the deadlines' in the scheduling order." *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)). Requests to amend a scheduling order that, if granted, would impact the dispositive and trial ready dates of a case are not favored. *See, e.g., Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, No. 97-CV-2185 (JRT/RLE), 187 F.R.D. 578, 582 (D. Minn. 1999) (noting that "'[s]cheduling orders have become increasingly critical to the district court's case management responsibilities,' and the capacity of such Orders to sensibly advance litigation to the point of Trial must be responsibly preserved.") (citations omitted, cleaned up); *Farmers Coop. Soc'y, Sioux Ctr., Iowa v. Leading Edge Pork, LLC*, No. 16-CV-4034 (LRR/CJW), 2017 WL 11461039, at *2 (N.D. Iowa Mar. 31, 2017)

(declining to move the trial ready date because Federal Rule of Civil Procedure 1 requires courts to move cases forward towards resolution); *Polaris Indus. Inc. v. CFMOTO Powersports, Inc.*, No. 10-CV-4362 (JNE/HB), 2014 WL 12755025, at *3 (D. Minn. Sept. 25, 2014) ("The Court is troubled by the apparently slow pace of discovery in this case, but will permit one more extension of fact discovery, *as it will not affect the dispositive motion deadlines and the trial ready date*.") (emphasis added).

Likewise, requests that, if granted, would guarantee that the case would remain unresolved for over three years are also not favored. *See, e.g., E3 Biofuels, LLC v. Biothane, LLC*, No. 8:11-CV-44 (LSC/FAG), 2013 WL 3337315, at *4 (D. Neb. July 2, 2013) (citing *Zip Dee, Inc. v. Dometic Corp.*, 926 F. Supp. 772, 775 (N.D. Ill. 1996) (describing Congress's requirement in the Civil Justice Reform Act of 1990 ("CJRA"), 28 U.S.C. § 476(a)(3), that all three year old cases be publicly reported and stating that, "[a]lthough . . . no talismanic significance is to be attributed to a lawsuit's passing its third anniversary, the enactment of that provision . . . is one of the indications of Congress'[s] deep concern (one that the courts have long held) that justice delayed may be justice denied.")).

## III.    DISCUSSION

Plaintiff moves to both extend the case deadlines in a fifth amended pretrial scheduling order, and for a protective order for its representative's 30(b)(6) deposition. The Court will take each request in turn below.

### A.    Plaintiff's Request for a Fifth Amended Pretrial Scheduling Order

On one point the parties agree: there is an outstanding, necessary deposition that did not occur during the permitted discovery period. (Pl.'s Mem. Supp. at 6–7, 12–13; Def.'s

Mem. Opp'n at 12–13; Hr'g Tr. at 26:8–15.)[1] On all other points, the parties disagree, as discussed below.

### 1.    The Parties' Positions

In its Motion, Bepex makes three main arguments that good cause exists to amend the Scheduling Order: 1) Bepex's diligence; 2) the absence of prejudice to HMBV; and 3) the only slight disruptions that these amendments would pose to the overall case. (Pl.'s Mem. Supp. at 8–12.)

First, Bepex argues that it has been diligent in navigating various complexities in the case, including "this case's technical subject matter, international scope, pandemic-related delays, the recent hospitalization of a key witness, and more." (*Id.* at 8.) At oral argument, Bepex observed that the case's deadline extensions "have largely been driven by HMBV and COVID[,]" but that the "case has been full of black swan events" more generally, including COVID and other health concerns, computer problems, and the war in Ukraine. (Hr'g Tr. at 25:1–26:7.) Bepex claims that HMBV has caused significant delays

---

[1] Even on this point of general agreement, the parties still have related sub-disputes. Bepex argues that the remaining Rule 30(b)(6) deposition of its representative requires extending fact discovery, and that the need for this essential deposition provides good cause to do so. (Pl.'s Mem. Supp. at 8.) HMBV argues that, because it has sought to schedule the Rule 30(b)(6) deposition of Bepex's representative within the current Scheduling Order deadlines multiple times, that deposition should be permitted, but does not provide a basis for good cause to otherwise extend the Scheduling Order's deadlines. (Def.'s Mem. Opp'n at 13.) Bepex notes that, given that HMBV seeks testimony "on 24 topics that are alternatively broad and technical in nature[,]" it will likely have to prepare "multiple witnesses for this Rule 30(b)(6) deposition." (Pl.'s Mem. Supp. at 13.) HMBV takes issue with Bepex's use of the plural "depositions" in its Motion—fearing Bepex will use an extended discovery period for more than it expressly states in its Motion—and argues that the only deposition that should be permitted to fall outside discovery, despite being part of it, is the Rule 30(b)(6) of Bepex's representative. (Def.'s Mem. Opp'n at 12–13.)

throughout discovery by failing to produce many documents until recently, and by labeling many of those documents AEO. (Pl.'s Mem. Supp. at 9; Hr'g Tr. at 25:6–18, 29:4–17.) According to Bepex, it is also still waiting to receive some supplemental discovery responses from HMBV and will need time to review those responses once produced. (Pl.'s Mem. Supp. at 9–10.) Moreover, Bepex claims that it has received recent discovery responses from HMBV and anticipates motions practice over HMBV's "unsatisfactory" responses, as well as over Bepex's concern that HMBV is overusing the AEO designation in its productions.[2] (Pl.'s Mem. Supp. at 10; Hr'g Tr. at 27:8–11.) Only after these issues are resolved, Bepex argues, will it be able to prepare a representative for a 30(b)(6) deposition. (Pl.'s Mem. Supp. at 13; Hr'g Tr. at 28:18–23 ("[W]e just want to have discovery completed and these AEO issues resolved before we produce a witness for our 30(b)(6) deposition . . . because they're going to bind the corporation, and . . . should have the benefit of discovery being complete").) Given its accusations about Defendant's delays, Bepex argues that, if the Court denies Plaintiff's Motion, the Court "is incentivizing litigation gamesmanship" in which a defendant may delay producing discovery—or shield its most important discovery with AEO designations—then simply run out the litigation clock. (Pl.'s Mem. Supp. at 10.)

Second, Bepex argues that HMBV will not be prejudiced if the Court grants Plaintiff's Motion and issues a fifth amended scheduling order. (*Id.* at 11.) Bepex claims that "HMBV has yet to articulate any specific prejudice they would suffer" and that,

---

[2] Plaintiff subsequently filed those two additional discovery-related Motions to Compel (Dkt. Nos. 156, 165.)

moreover, "an extension would *benefit* HMBV" because Bepex has produced recent discovery that HMBV will need time to review. (*Id.* (emphasis in original).) Bepex also argues that, while HMBV says it has foregone business opportunities during the pendency of this litigation, during meet-and-confers HMBV could not identify any such sacrifices specifically, and that, regardless, such sacrifices are entirely voluntary on HMBV's part. (Hr'g Tr. at 27:20–28:11.)

Finally, Bepex claims that its proposed 90-day extension of Scheduling Order deadlines will not significantly disrupt the case's overall schedule. (Pl.'s Mem. Supp. at 11.) Plaintiff argues that, under the amended dates that it proposes (*see* Pl.'s Proposed Fifth Am. Pretrial Sched. Order at 1–2), "the case will still be trial-ready before year's end." (*Id.*) Specifically, Bepex asks for extensions ranging between 74 to 88 days for all remaining case deadlines, including moving the close of fact discovery and related non-dispositive motions from April to July; expert discovery and related non-dispositive motions from late May or early June to August; dispositive motions from June to September; and the trial ready date from September to December. (Pl.'s Proposed Fifth Am. Pretrial Sched. Order at 1–2.)

HMBV points out that it is Bepex's own diligence—not Bepex's misplaced focus on HMBV's alleged delays—that will determine whether good cause exists for this Motion, and counters Plaintiff's Memorandum with two principal arguments: 1) Bepex's lack of diligence; and 2) HMBV's prejudice. (Def.'s Mem. Opp'n at 4–16.)

First, HMBV argues that, although Bepex claims HMBV has caused delays throughout discovery, Bepex's own delays have shaped the course of discovery because

"HMBV has been forced to continuously hound Bepex to provide even basic evidence concerning its claims." (*Id.* at 4–7.) Defendant claims that such delays violate Federal Rule of Civil Procedure 11 because "Bepex should have been prepared ***when its Complaint was filed*** to identify its trade secrets." (*Id.* at 7 (emphasis in original).) HMBV also contends that it awaits outstanding supplemental responses from Bepex for several interrogatories, and that both parties—not just HMBV—have "produced a lot of documents late in the case, including many more pursuant to the Court's February 2022 Motion to Compel rulings." (*Id.* at 7, 9; Hr'g Tr. at 30:9–18.) According to HMBV, some of the circumstances to which Bepex attributes delays had, in its opinion, no appreciable impact on the case, including computer problems and the war in Ukraine. (Def.'s Mem. Opp'n at 11–12.) Additionally, if HMBV's responses to discovery so far are deficient, Bepex has not been diligent in notifying HMBV and engaging in meet-and-confers on those alleged deficiencies to seek a resolution within the current Scheduling Order's deadlines. (*Id.* at 12.) HMBV also counters Plaintiff's assertion that it is overusing the AEO designation in its productions, noting that "[o]f the 4,000 documents that we produced in March . . . 150 were attorneys' eyes only." (Hr'g Tr. at 29:20–22.)

Second, HMBV argues that it would be greatly prejudiced by further delays. (Def.'s Mem. Opp'n. at 7, 15–16.) Defendant claims that, "out of an abundance of caution, . . . HMBV made a voluntary decision . . . to refrain from making or selling any new mixers or dryers that were not already in process, sold/or concluded" after the parties' licensing agreement terminated. (*Id.* at 15–16 (citing Krug Decl. ¶ 4, Dkt. No. 147).) HMBV claims this decision has reduced its sales, while it has simultaneously had to spend financial and

10

employee resources to defend against Plaintiff's lawsuit. (*Id.* at 16.) Defendant claims that it will be greatly prejudiced if the Court grants Bepex's Motion because, with every passing month of litigation, HMBV continues losing potential sales while spending resources on this litigation. (*Id.*)

### 2.    Holding

The Court holds that Bepex has demonstrated enough diligence to amount to good cause justifying some (but not all) of the requested amendments to the Scheduling Order. A movant's diligence is the primary measure of good cause to amend a scheduling order. *Sherman*, 532 F.3d at 716. With this guide, the Court will take each of Bepex's arguments in turn.

First, Bepex argues that it has been navigating numerous events that have complicated the timeline for this case. (Pl.'s Mem. Supp. at 8.) In reviewing this case's docket, the Court has concerns that the parties could have brought some of their discovery disputes to it for resolution earlier, although none of them have been untimely under the Scheduling Order to date. (*See* Hr'g Tr. at 31:18–32:2.) Nevertheless, the Court finds that the exceptional circumstances of the pandemic and the health concerns that Plaintiff cites as causes for delay do support a limited finding that, despite Bepex's diligence, some delays to discovery could not be avoided. There is, therefore, good cause supporting some extensions to the case's deadlines.

Next, Bepex argues that HMBV has caused significant delays throughout discovery by failing to produce many documents until recently. (*Id.* at 9–10.) The Court does not find Bepex's argument that all delays in this case have been caused by HMBV convincing. (*See*

Feb. 4 Order at 11, Dkt. No. 97 (granting defendant's Motion to Compel in part because Plaintiff had not provided sufficiently specific discovery responses on fundamental issues at stake in the case).) Bepex complains that a defendant should not be able to refuse to produce responsive discovery, then run out the clock, but the same is true for a plaintiff. HMBV claims that it, too, has been waiting for materials that Bepex should have provided much sooner; it, too, has received late-stage discovery productions, some of which resulted from the parties' earlier-referenced cross-Motions to Compel on 21 disputes; and that it, too, is waiting on some supplemental discovery responses from Bepex. (Def.'s Mem. Supp. at 4–7, 9; Hr'g Tr. at 30:9–18.) Thus, the Court finds little merit in Bepex's claims that HMBV's delays are wholly to blame for the necessity of this Motion. This argument neither demonstrates Plaintiff's diligence, nor supports a finding of good cause.

Finally, Bepex also argues that HMBV's choice to label some discovery productions AEO—rendering that discovery essentially meaningless to Bepex where no one with the required technical expertise was then-permitted to view that discovery—has caused delays despite Bepex's diligence. (Pl.'s Mem. Supp. at 9.) The Court finds Bepex's diligence is mixed on this point. On the one hand, as the Court noted at the motions hearing, if Bepex thought that there was a concern about HMBV's use of the AEO designation on its productions in November of 2021, it would have been better if it had brought this issue to the Court's attention earlier. (Hr'g Tr. at 8:6–7.) On the other hand, Plaintiff's Motion raising this issue was timely. Moreover, given that the information contained in AEO documents is fundamental to the claims and defenses of this case, the facts demonstrate that there is good cause to provide a limited extension to some case deadlines in line with

the Court's April 14, 2022 Order. (*See* Hr'g Mins. at 1.) In that Order, the Court granted Defendant's request for an AEO designation for some productions, subject to one modification: "the AEO-tier of protection [shall] also include viewing permission for an entity with the technical expertise to interpret AEO-designated information on behalf of Bepex." (Hr'g Mins. at 1.) To determine who this individual should be (and what appropriate non-disclosure agreement they should sign), the Court ordered the parties to meet-and-confer and to submit to the Court by April 30, 2022, either their agreement on these points, or their positions so that the Court can resolve this dispute. (*Id.* at 1; *see also* Apr. 14 Order.) Based on these facts, the Court finds that, while Bepex's diligence is mixed on this point, a limited extension of deadlines is merited to finalize who shall fulfill Bepex's need for technical expertise when viewing HMBV's AEO-designated productions.

Having found that Bepex presents facts showing that despite its diligence, some of the Scheduling Order's deadlines could not be met, the Court will next consider prejudice to the nonmovant. *See Shank*, 329 F.R.D. at 614. There is conflicting evidence about whether HMBV's voluntary decision to forgo alleged business opportunities for equipment related to this litigation has—or will in the future—caused HMBV prejudice. HMBV's hardship is self-imposed; but if it chose, instead, to continue selling the disputed equipment, it could be imposing additional damages upon itself that it will have to pay later if it loses this case. *Shank* requires the Court to consider "*possible* prejudice" to the nonmovant, but HMBV provides no caselaw to support that its voluntary choice constitutes prejudice that this Court should consider. *Id.* Thus, the Court finds that no prejudice to HMBV mitigates against amending the scheduling order.

Consequently, the Court finds that Plaintiff's diligence provides good cause for this Court to enter a fifth amended pretrial scheduling order. However—because this case is rapidly approaching its three year anniversary and moving the dispositive and trial ready dates in a case is not a favored practice—the Court declines to extend this case's deadlines, except those necessary to conclude discovery in this action. Therefore, fact discovery, which closed on April 4, 2022, is reopened and extended only for the narrow, limited purpose of permitting HMBV to depose Bepex's Rule 30(b)(6) representative, as discussed in more detail below in Section III.B. It remains closed as to all other discovery. The non-dispositive motions deadline for disputes related to discovery, which passed on April 18, 2022, is reopened and extended for the limited purpose of allowing remaining discovery disputes that could not be brought earlier (because of delays due to pandemic and health-related concerns, and because the AEO designations limited Bepex's ability to understand the discovery produced) to be resolved by informal dispute resolution ("IDR") or motions practice. The non-dispositive motions deadline is now May 23, 2022, and any such IDR requests or motions must be filed on or before that date. All other deadlines, including expert discovery, non-dispositive motions relating to expert discovery, dispositive motions, and trial-ready deadlines, remain unchanged. This case is approximately five months from being trial ready, and it must be trial ready by that date.

## B. Plaintiff's Request for a Protective Order for its Rule 30(b)(6) Representative's Deposition

In addition to moving to extend the Scheduling Order's deadlines, Plaintiff also asks for a protective order for its Rule 30(b)(6) representative's deposition. (Pl.'s Mem. Supp.

at 6–7, 12–13.) Federal Rule of Civil Procedure 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending," so long as they certify that they "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking the protective order bears the burden of establishing "good cause" for its issuance. *See Northbrook Digital, LLC v. Vendio Servs., Inc.*, No. 07-CV-2250 (PJS/JJG), 625 F. Supp. 2d 728, 734 (D. Minn. 2008). The movant must set forth "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements[,]" showing why a court should order such protections. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (citation omitted). "When determining whether to issue a protective order, courts apply a 'balancing test' to determine whether good cause exists, weighing the moving party's potential burden against the opposing party's interest in the discovery at issue." *Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*, No. 12-CV-2706 (MJD/LIB), 2014 WL 10714011, at *12 (D. Minn. Dec. 5, 2014) (citing *Brosdahl-Nielsen v. Walden Auto. Grp., Inc.*, No. 04-CV-1363 (JMR/JSM), 2004 WL 6040018, at *2 (D. Minn. Nov. 24, 2004)).

Here, the parties agree on one point: there is still an outstanding Rule 30(b)(6) deposition that should occur. However, they disagree on *when* it should occur, as discussed below, giving rise to Plaintiff's request for a protective order.

### 1.    The Parties' Positions

In its Motion, Bepex seeks a protective order pursuant to Rule 26(c)(1)(B) and (G), which give this Court authority to issue protective orders specifying the timing for a deposition, and "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(B), (G). Bepex's arguments that good cause exists to amend the Scheduling Order and issue a protective order are similar to those it raises in support of a fifth amended scheduling order in Section III.A and are as follows.

First, Bepex argues that there is good cause for the Court to issue a protective order because HMBV has not timely complied with its written discovery obligations. (Pl.'s Mem. Supp. at 12–13.) Without having received HMBV's discovery responses, Bepex claims it is unable to fully prepare its representative to be deposed on topics at the core of this litigation involving specific technical details about the alleged trade secrets at issue. (*Id.* at 13.) Bepex argues that a protective order is thus warranted because it needs at least two weeks, once it receives HMBV's productions, to review them and prepare its representative for a Rule 30(b)(6) deposition. (*Id.*) Second, HMBV argues there is good cause to delay the Rule 30(b)(6) deposition until after "the parties' AEO dispute is resolved." (Pl.'s Mem. Supp. at 12–13.)

In opposition to Bepex's Motion, HMBV argues that good cause does not exist "for a protective order further delaying Bepex's 30(b)(6) [d]eposition" and asks the Court to deny Plaintiff's Motion as to this request. (Def.'s Mem. Opp'n at 13.). First, HMBV claims that Bepex has known for months that HMBV was seeking a Rule 30(b)(6) deposition of Bepex's representatives. (Def.'s Mem. Opp'n at 12.) HMBV argues that it "has tried at least two times over the past several months to take a 30(b)(6) deposition of Bepex[,]" but that Bepex has improperly declined. (*Id.* at 13.) Second, HMBV contends that Bepex has not permitted the 30(b)(6) depositions on any topic, but that there are many topics that are unrelated to recently-served discovery on which Bepex could have designated a representative for a 30(b)(6) deposition. (*Id.*) Third, HMBV argues that it will be greatly prejudiced by further delays. (*Id.* at 7, 15–16.)

## 2.    Holding

The Court grants Plaintiff's Motion in part. Bepex has demonstrated by specific facts, and not just stereotypes and conclusory statements, that there is good cause to delay its representative's Rule 30(b)(6) deposition. The Court will consider how this good cause balances against HMBV's potential hardships should the protective order be issued. *See Bombardier*, 2014 WL 10714011, at *12.

First, to dispose of what does <u>not</u> provide good cause, Bepex argues there is good cause for a protective order here where HMBV has failed to timely comply with its discovery obligations. (Pl.'s Mem. Supp. at 12–13.) The Court has already found that Plaintiff's own delay in disclosing its trade secrets created a discovery bottleneck, and that in consequence Plaintiff may not now complain it is suffering prejudice solely because of

HMBV's untimely productions. (*See* Feb. 4 Order at 11). Moreover, HMBV stated at the motions hearing on April 14, 2022, that it anticipated its supplemental responses would be provided to Bepex "by either tomorrow or by Monday." (Hr'g Tr. at 26:22–23.) As of the time of this writing, the Court is concerned that Bepex has not met its anticipated deadlines for these most recent supplemental responses, given Defendant's claims in its Motions filed on April 28, 2022. (*See* Dkt. Nos. 90–91.)

This aside, there is still some merit to Bepex's claim that it cannot adequately prepare a representative for a Rule 30(b)(6) deposition without permission for someone with technical expertise to view productions that HMBV has designated as AEO. (Pl.'s Mem. Supp. at 12–13.) When the Court orally granted Defendant's Motion to Amend the Protective Order (*see* Hr'g Mins at 1–2; Hr'g Tr. at 21:16–22:15), the Court deviated from Defendant's request to the extent of allowing AEO documents to be viewed by a person with the technical expertise reasonably required for Plaintiff to prepare its representative. Designation of a suitable "interpreter" will take place, as the Court ordered, on or before April 30, 2022. (*See* Apr. 14 Order.) Yet the Court also finds that HMBV will face hardships in continuing to wait for a deposition that is likely central to its defense, that it has been trying to schedule for months, and that it doubtless must conduct in order to prepare for dispositive motions and trial. Balancing Plaintiff's burden to show facts that a protective order is warranted against HMBV's hardship, the Court finds that a protective order shall issue, but shall only provide protection during a limited period. That period shall protect Bepex from a Rule 30(b)(6) deposition for up to two weeks after the AEO designation dispute is resolved regarding which individual, beyond outside counsel, will

be permitted to view AEO-designated materials. HMBV must, however, notice the Rule 30(b)(6) deposition to occur at least two weeks before the dispositive motions deadline. This gives the parties a necessary, limited window to finish this last remaining part of fact discovery.

## IV.    CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiff Bepex International, LLC's Motion to Amend the Scheduling Order and for a Protective Order (Dkt. No. 103) is **GRANTED** in part and **DENIED** in part as set forth above;

2.    Fact discovery, which closed on April 4, 2022, is reopened and extended for the limited purpose of permitting HMBV to depose Bepex's Rule 30(b)(6) representative <u>only</u>. This deposition must occur on or before **<u>June 6, 2022</u>**;

3.    A protective order is issued pursuant to Federal Rule of Civil Procedure 26(c)(1)(B) and (G) as to the timing of Bepex's Rule 30(b)(6) representative. That Rule 30(b)(6) deposition shall occur **<u>no sooner than 14 days after the determination of which individual, in addition to outside counsel, will be permitted to view AEO-designated materials</u>**—whether by party or Court resolution—and **<u>no later than June 6, 2022</u>**, a date which is two weeks before the dispositive motions deadline. HMBV shall notice this deposition to occur during this designated period, and Bepex's representative shall

appear for a deposition so noticed. The Court cautions the parties that this window will not be extended again;

4.      The non-dispositive motions deadline, which passed on April 18, 2022, is reopened and extended for the limited purpose of allowing remaining discovery disputes to be resolved by any final motions practice. The non-dispositive motions deadline is now **May 23, 2022**, and any such motions shall be filed on or before that date;

5.      Except as amended by this Order, the Fourth Amended Pretrial Scheduling Order remains operative, and all other deadlines, including, expert discovery, non-dispositive motions relating to expert discovery, dispositive motions, and trial-ready deadlines, will remain unchanged; and

6.      This Order shall be unsealed in its entirety 30 days from the date it is filed, unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information referred to in this Order, and shall file a joint letter and proposed redacted order **within 14 days from the date this Order is filed**, identifying with specificity the redactions they believe are required and the basis for those redactions.

Date: April 29, 2022                    _s/ John F. Docherty_
                                        JOHN F. DOCHERTY
                                        United States Magistrate Judge